John Eddie WILLIAMS, Appellant,

v.

The STATE of Texas, State.

No. 2-90-328-CR.

Court of Appeals of Texas,
Fort Worth.

June 30, 1992.

Discretionary Review Refused
Nov. 4, 1992.

David B. Lobingier, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall, Asst. Dist. Atty. Chief of Appellate Section, Lynn Allison, J.M. McEntire, Terry Barlow, Asst. Dist. Attys., for appellee.

Before JOE SPURLOCK, II, FARRIS and MEYERS, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

John Eddie Williams appeals his jury conviction for possession of a firearm by a felon, which was enhanced by three prior felonies. *See* TEX.PENAL CODE ANN. § 46.05 (Vernon 1989); TEX.PENAL CODE ANN. § 12.42 (Vernon 1974). The trial court sentenced him to thirty years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

On July 17, 1989, two undercover officers, after seeing a group of individuals standing near an abandoned club, drove into the club parking lot. They observed Williams move away from the group, reach in his back pockets, turn around in circles, and try to keep his back to the officers at all times. As the officers got out of their car to look around, Williams began moving away from them, and when he reached the corner of the building, he began running toward the back of the club next door.

The officers chased Williams, but lost sight of him when he ran behind the club. At that time, Officer Sam, another member of the undercover team, was getting out of his car on the other side of the club and saw Williams "running—walking very hurriedly" toward him. The officer testified that he saw Williams fidget with the front part of his clothing as if trying to conceal something and then throw that object toward a fence. The officer testified that he could not tell what Williams threw, but he observed that it was large enough to "possibly be a gun." After seeing the officer, Williams turned around and walked back toward the other side of the building displaying empty hands.

A 380 caliber semiautomatic pistol was found close to where Officer Sam saw Williams throw down the object. After the weapon was found, another officer searched Williams and found bullets of a 380 caliber, the same caliber as found in the weapon and its magazine.

In his first point of error, Williams argues that the trial court erred when it explained to the venire panel before voir dire that:

The burden of proof is upon the State, and if the State fails in this you will be instructed to find the Defendant not guilty.

Williams argues that because there was no instructed verdict, and the jury received no instructions from the trial court, the jury's only logical alternative was to find Williams guilty, and therefore, the court's statement constituted an impermissible

comment on the weight of the evidence in violation of Tex.Code Crim.Proc.Ann. art. 38.05 (Vernon 1979).[1]

■ The State argues that Williams waived error on his first point by failing to object to the court's statement. We agree. To constitute reversible error in violation of Tex. Penal Code Ann. § 38.05, the judge's comment must be such that it is reasonably calculated to prejudice the defendant's rights or benefit the State. *Marks v. State*, 617 S.W.2d 250, 252 (Tex.Crim.App. [Panel Op.] 1981). To preserve error, the complaining party must have objected to the judge's comment or the objection is waived. *See Sharpe v. State*, 648 S.W.2d 705, 706 (Tex.Crim.App.1983); *see also Nevarez v. State*, 671 S.W.2d 90, 93 (Tex.App.—El Paso 1984, no pet.) (defendant's complaint that the trial court improperly commented on the weight of the evidence was not preserved for error because defense counsel did not object). Williams did not object to the judge's instruction, and therefore, any error was waived.

■ Even if error was not waived, the instruction would not be an improper comment on the weight of the evidence if it was not reasonably calculated to benefit the State or to prejudice Williams' rights. *See Beeson v. State*, 651 S.W.2d 944, 948 (Tex.App.—Fort Worth 1983, no pet.) (judge's comment to the jury that the trial would proceed to the presentation of defendant's evidence did not convey to the jury that the State's evidence was sufficient and was not reasonably calculated to benefit the State or prejudice defendant's rights).

Williams however, relies on *McClory v. State*, 510 S.W.2d 932, 933 (Tex.Crim.App. 1974), in which the court of criminal appeals reversed a conviction based on the following dialogue:

[The State]: .... Also in the charge, there's some talk about self defense. Simply because this is the charge that doesn't mean the judge believes it; it's in there because the Defendant raised that issue—

[Defense Counsel]: Objection, Your Honor; I object to his saying what the Judge believes about anything.

The Court: He didn't say I did; he said I didn't. Overruled.

*Id.* at 933. The court of criminal appeals held that the jury could logically surmise that the trial court did not believe appellant's defensive issue of self-defense, but that it was submitted only because the defendant raised the issue. *Id.* at 934.

■ The case at hand is distinguishable. First, the defendant in *McClory* objected at the time the judge made the statement, which he did not in this case. Second, in the instant case, the judge was not stating his opinion, but rather, he was explaining the applicable rules of criminal law. Therefore, we find the instruction was not reasonably calculated to harm Williams or benefit the State. Point of error number one is overruled.

Williams contends in his second and third points of error that the evidence is insufficient to prove that he possessed a firearm away from the premises where he lived.

■ The standard for review in reviewing the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The standard for review is the same for direct and circumstantial evidence cases. *Butler v. State*, 769 S.W.2d 234, 238 (Tex.Crim. App.1989). Nevertheless, the court of criminal appeals has stated: "when reviewing the sufficiency of circumstantial evidence, we ordinarily utilize the outstanding reasonable hypothesis theory as an analytical tool." *Madden v. State*, 799 S.W.2d 683, 690 (Tex.Crim.App.1990).

■ Williams contends that no one credible witness observed him in "possession" of a firearm, and the only officer who observed him possessing an object stated the object could "possibly" be a gun. Williams relies on *Flores v. State*, 756 S.W.2d 86 (Tex.App.—San Antonio 1988,

---

**1.** Tex.Code Crim.Proc.Ann. art. 38.05 provides that the judge shall not "at any stage of the proceeding previous to the return of the verdict, make

any remark calculated to convey to the jury his opinion of the case."

pet. ref'd) in which the court found the evidence insufficient to establish possession of a controlled substance where it was shown that others had access to the contraband. *Id.* at 87–88. We hold the *Flores* reasoning not controlling in this case. Although the field into which Williams threw the object was technically accessible to other people, there were no people around at the time the officer saw Williams throw something that resembled a gun in the area where a gun was actually found. Thus, because a gun was found in the area where the object was thrown, and the gun found used the same caliber of bullets that were found in Williams' pockets, there is no other reasonable hypothesis except that Williams had been in possession of the gun that was found.

Williams further contends that the evidence is insufficient to establish that he did not reside at the place where he was arrested because the abandoned club had a regulation mailbox and could have been a residence for the homeless where Williams could have been staying. The State contends that testimony established that the Sugar Hill Club was not a residence and had no facilities for people to sleep.[2] Moreover, the State contends that even if the abandoned club were Williams' residence, Williams was in possession of the firearm in the parking lot, and an adjacent parking lot is not part of the premises, citing *Shepperd v. State*, 586 S.W.2d 500, 504 (Tex. Crim.App. [Panel Op.] 1979). The State further argues that it does not have to offer evidence of Williams' actual residence, citing *Nesbit v. State*, 720 S.W.2d 888, 890 (Tex.App.—Austin 1986, no pet.) (trial court justified in concluding truck was not the premises where appellant lived and disbelieving appellant's testimony that he lived in his truck).

■ The State did not establish where Williams actually lived; however, it estab-

lished that he did not live in the abandoned club. Moreover, the officers testified that when they arrived at the club, Williams was standing by the club's front entrance. Photographs of the club show that the parking lot is adjacent to the front of the building, and therefore, even if the club was his residence, he was in possession of a firearm away from his premises. *See Shepperd v. State*, 586 S.W.2d at 504. Furthermore, once Williams saw the officers, he walked, and then ran, away from the building while still possessing the firearm. We find, therefore, that the evidence is sufficient to establish that Williams' possession of the firearm was away from the premises where he lived. We conclude the State did not have a burden to negate Williams' inferential contention on appeal that his residence was a nightclub parking lot. Points of error two and three are overruled.

In point of error four, Williams contends that the trial court improperly admitted a handgun and bullets into evidence because they were obtained in violation of U.S. CONST. amend. IV & TEX. CONST. art. I, § 9. He argues that the officers had no probable cause to either search him or arrest him without a warrant. Williams contends that the only information the arresting officer had was that Williams had thrown "something" down, and had no grounds to detain or further search him (discovering the 380 caliber bullets).

Williams relies on *Hawkins v. State*, 758 S.W.2d 255 (Tex.Crim.App.1988). In *Hawkins*, the court of criminal appeals reversed the trial court's decision to permit the introduction of abandoned contraband, holding that the officer unjustifiably approached the defendant and detained him without any evidence of criminal conduct. *Id.* at 260.

The State counters that Williams waived error on this point because he asserted "no

---

2. Testimony regarding the Sugar Hill Club as a residence was as follows:

    Q. [PROSECUTOR]: Officer Moore, have you ever been inside The Sugar Hill Club?
    A. [Moore]: Yes, I have.

    Q. Is that your typical club in the sense that there are no facilities for people to live in, to sleep in, anything like that?
    A. Correct.
    Q. You wouldn't classify that as a residence, would you?
    A. No, not a residence.

objection" when the State offered the handgun and the bullets into evidence, even though he lost in the suppression hearing, citing *Dean v. State*, 749 S.W.2d 80, 83 (Tex.Crim.App.1988); *Harris v. State*, 656 S.W.2d 481, 484 (Tex.Crim.App.1983). We agree.

When a pretrial motion to suppress evidence is overruled, the defendant need not subsequently object at trial to the same evidence in order to preserve error on appeal. *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex.Crim.App.1986); TEX.CODE CRIM.PROC.ANN. art. 40.09(6)(d)(3) (Vernon 1979). However, when the defendant affirmatively asserts during trial that he has "no objection" to the admission of the complained of evidence, he waives any error in the admission of the evidence despite the pretrial ruling. *Dean*, 749 S.W.2d at 83; *Moraguez*, 701 S.W.2d at 904. Thus, because defense counsel specifically stated that he had "no objection" to the admission of the handgun and the bullets, we hold that the issue has not been preserved for error.[3] Point of error number four is overruled.

In point of error five, Williams contends the trial court erred in admitting comments and evidence regarding alleged extraneous offenses committed by him. He first complains about the trial court's comment when it sustained an objection to the prosecutor's mention of an extraneous offense during opening statements:

We expect the testimony in this case from the police officers to show that the hub in that area, the hub of narcotics, street level narcotics distribution were Evans and Maddox Street (sic) and the three-block area surrounding those streets.

In instructing the jury to disregard the statements, the court stated, "Ladies and Gentleman of the jury, please disregard anything concerning narcotics. That's not the kind of case we are trying just yet." Williams contends on appeal that because of the court's statement, the jury could assume that "surely later evidence that the Appellant was involved in the drug trade would come forward." However, Williams did not object at the time of the court's statement.

Williams secondly complains that the officers referred to narcotics in their testimony, and the prosecutor referred to the club as being a "criminal location."[4] Williams objected to the various statements as being extraneous offenses, and the judge overruled each objection.

Regarding the judge's comment, the State argues that Williams made no objection to the comment, and therefore, waived error, citing *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex.Crim.App.1983). The State further argues that Williams cites no authority stating that the judge's comment was erroneous. Moreover, the State argues that even if error was not waived, Williams' first objection regarding extraneous offenses was sustained and an instruction was given to the jury to disregard the question and the answer. Thus, even if the question was improper, any error was

---

3. Even if this point had been preserved, the trial court properly denied Williams' motion to suppress. The officers' pursuit of Williams was justified. When the officers first drove into the parking lot, they stayed in the car. Even at that point, Williams was turning around in circles and reaching into his pockets, attempting to keep his back to the officers at all times, generally acting suspicious. When the officers got out of the car and headed towards the area where the group of men had been standing, Williams looked back at the officers and started running. Because Williams was legally detained, we do not reach the question of whether Williams' decision to abandon the object was the product of the illegal acts of the police. *Hawkins*, 758 S.W.2d at 260–61.

4. Williams also complains about the prosecutor's question: "Specifically, are there any locations in the vicinity of Evans and Maddox Streets that you had previously made undercover narcotics buys, found narcotics, things of that nature?" Williams further complains about an officer's testimony in which he stated: "While myself and my partner were on patrol he brought my attention to a small club that has been abandoned for some time, with a group of individuals standing there. He advised me that they were just milling around the side and it was abandoned. From that building, our previous experience, we usually pull up there and check around the building where we've recovered numerous items—numerous drug paraphernalia and drugs itself."

cured. Regarding the other references to narcotics in the record, the State argues that Williams' objections were properly overruled because the testimony did not show that a narcotics offense was committed nor that Williams committed an offense.

Evidence of an extraneous offense must necessarily involve evidence of prior criminal conduct by the accused. *McKay v. State,* 707 S.W.2d 23, 31–32 (Tex. Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). If the challenged evidence fails to show that an offense was committed or that the accused was connected to the offense, then evidence of an extraneous offense is not established. *Harris v. State,* 738 S.W.2d 207, 224 (Tex.Crim.App.1986) (opinion on reh'g), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987); *Ortega v. State,* 792 S.W.2d 145, 148 (Tex.App.—Amarillo 1990, pet. ref'd).

We find that none of the challenged evidence rises to the level of alleging that Williams committed an extraneous offense. None of the testimony that Williams is complaining about shows that any offense involving narcotics was actually committed or that Williams committed a crime. Even if the judge erred in allowing any of the testimony into evidence, any error was harmless because the jury was instructed at least twice that they were not to consider any testimony concerning narcotics or the ordinary work of the officers involved. Point of error five is overruled.

In point of error six, Williams contends that the trial court erred in refusing to require the State to articulate neutral reasons for failing to use all of its peremptory challenges. The original venire panel consisted of forty-two people, of which numbers 1, 7, 8, 11, 21, 22 were African–Americans. Williams argues that the State exercised only five of its ten peremptory challenges, thereby mathematically eliminating the possibility that Juror # 21 could be reached for jury service, and thus, excluding a member of his race.[5]

The State contends that it is not required to articulate neutral reasons for failing to use all of its peremptory challenges because that would exceed the scope of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989). We agree.

As this court stated in *Hamel v. State,* 803 S.W.2d 878, 880 (Tex.App.—Fort Worth 1991, pet. ref'd), the State has no duty to use all of its strikes merely because there are minority members of the panel farther down the jury list. To hold otherwise would be to require the State to explain its reasons for failing to strike unobjectionable jurors, thus calling into question the practice of peremptory strikes and the participation of counsel in the jury selection process.[6] *Id.*

*Batson* is limited to situations where the State has affirmatively stricken members of the venire and does not apply to jurors who simply are mathematically not subject to sitting on the jury. *Munson v. State,* 774 S.W.2d 778, 779 (Tex.App.—El Paso 1989, no pet.). In addition, the jury consisted of four African–Americans, which the trial judge stated is in excess of the percentage of African–Americans in Tarrant County's population. Thus, because the prosecutor permissibly exercised his peremptory challenges, we overrule Williams' sixth point of error.

Judgment affirmed.

---

5. Under this point of error, Williams additionally complains that the prosecutor's explanation for his peremptory challenge of Juror # 22 was not a permissible reason. However, as the juror was not reached, the discussion of motive for striking a panel member is moot, and as a matter of law no harm befell Williams.

6. A prima facie case under *Batson* includes showing that the prosecutor exercised strikes to *remove* venire members of the defendant's race. *Hamel,* 803 S.W.2d at 880.