TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00362-CR








Dion Delon Alexander, Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 44,876, HONORABLE JOE CARROLL, JUDGE PRESIDING 








 This appeal is taken from a conviction for attempt to commit capital murder during
the course of committing or attempting to commit robbery (1) alleged and proven to have occurred
on December 2, 1993. The jury found appellant Dion Delon Alexander guilty, rejecting his "not
guilty" plea. The trial court assessed punishment at life imprisonment. Appellant was tried
jointly with co-defendant Tyrone Akito Harris. See Harris v. State, No. 03-95-00319-CR, this
day decided.



POINTS OF ERROR


 Appellant advances seven points of error. Although not in chronological order,
appellant challenges the sufficiency of the evidence to sustain the conviction, contends that the
court erred in overruling both his "motion to suppress evidence" and his motion for severance,
and in allowing the prosecutor to interject facts into the case that were not in evidence. In
addition, appellant complains that the trial court erred in allowing unsworn testimony and, in
connection therewith, complains of the trial court's intervention and comments which he claims
deprived him of a fair trial under the Sixth Amendment to the United States Constitution.



SUFFICIENCY OF EVIDENCE


 The challenge to the sufficiency of the evidence is found in the seventh point of
error. We shall commence our discussion with this contention in order to place all of appellant's
contentions in proper perspective.

 Dalton Langford, the owner of D's Pawn Shop in Killeen, testified that on
December 2, 1993, he was at the store with his employee, Lorrie Lefler at about 6:45 p.m., near
closing time, he went into his office to do some book work, and Lefler began bringing the
bicycles on display outside into the store. After returning one bicycle, Lefler reported to
Langford that "three people were outside the building." She returned to her work. Langford went
to the store's counter and took out a loaded, but uncocked revolver. At this time, three black
males came into the store, one of them holding Lefler by the neck. One of the men yelled, Lefler
was shoved to the ground, and "they opened fire." Langford estimated that eight to twelve shots
were fired by the men. One shot grazed Langford's head and knocked his glasses off. One shot
grazed his ribs and another shot entered Langford's arm and elbow knocking him down. Other
shots hit a computer and various parts of the store. The men then ran. Langford never fired a
shot. He was able to tell Lefler to call 911 to notify the police. He did not get a good look at the
faces of the men and was unable to identify anyone as the men who he concluded were there to
commit robbery.

 Lorrie Lefler testified that, as she began bringing the bicycles into the store, she
saw a man walking across the parking lot. She identified him as Tyrone Harris. Later, she heard
male voices from the side of the building. Lefler reported what she had heard and seen to
Langford. When she returned to bring a second bicycle inside, Harris grabbed her around the
neck, told her to get back into the store and to get down. As they entered the store, she could tell
two other men were with Harris. She heard one of the men yell that "he (apparently Langford)
has a gun," and the firing commenced. When it ended, the men fled from the store and Lefler
called 911. She later selected Harris's photograph out of a photographic spread or lineup. She
was not able to identify the other two men.

 Officer Robert Hester of the Austin Police Department testified that on December
11, 1993, he stopped a vehicle in Austin because neither the driver nor the front seat passenger
was wearing seat belts as required by law. As the vehicle came to a stop, Officer Hester observed
that the front seat passenger made movements as if he was placing something under the front seat. 
Officer David Socha arrived on the scene as a backup. Socha removed the front seat passenger
from the car while Hester removed the driver. A third man appeared to be asleep in the back seat. 
The driver had no identification or driver's license and gave his name as Karl Dickens. It was
later shown that Dickens was Larry President. The front seat passenger gave his name as Tony
Rome when in fact he was Dion Alexander. The "sleeping man" gave his name as James Taylor,
but he was shown to be Tyrone Harris. Officer Hester searched under the front passenger seat
where Alexander had been seated and found a 9 millimeter Glock semiautomatic pistol. President
and Alexander were arrested, the vehicle impounded, and the pistol retained. Harris was released. 
Alexander and President were released sometime the next day.

 Killeen Police Officer Jack St. John testified that he investigated the scene at D's
Pawn Shop the night the offense occurred. State's exhibits 20 and 21 were identified as 9
millimeter shell casings found at the store. After St. John's conversation with one Donyell
Frederick, St. John contacted the Austin Police Department and obtained the 9 millimeter Glock
pistol found after the traffic stop on December 11, 1993. Russell Johnson, a firearm expert with
the Texas Department of Public Safety, test-fired the weapon and was of the opinion that it fired
the shell casings found at the pawn shop.

 Marvin LaVell Rhynes, a/k/a LaVell Willis, testified that he was in Colorado at
the time of the alleged offense, but that in the summer of 1994 he was returned to the Bell County
Jail on a drug charge. There, he encountered Dion Alexander whom he had known previously. 
Alexander told him that he (Alexander), along with Larry President, and a third man whose name
Rhymes could not recall, had committed the alleged offense at D's Pawn Shop, that they had gone
to the pawn shop to obtain jewelry and money by robbery, that a shoot-out occurred, and that they
left when they ran out of bullets. Alexander told Rynes he had wielded a .357 Magnum weapon,
and President fired a 9 millimeter weapon. Alexander told Rhynes that a woman was at the store
during the incident. Rhynes knew the location of the store from Alexander's conversation because
he had traded at D's Pawn Shop in the past. Alexander also informed Rhynes that shortly after
the offense, Austin police stopped the car in which he and his companions were riding and had
confiscated the 9 millimeter weapon. The other weapon was hidden in an Austin apartment and
was not recovered by the police. Rhynes reported his conversation with Alexander to Bell County
Officer Tim Steglich and gave a statement concerning the same. Rhynes denied that he had "cut
a deal" with any law enforcement authorities.

 Nicole Broadway, age 20, testified that she had lived all her life in Killeen; that she
had a child by Donyell Fredrick; that she knew Tyrone Harris, Dion Alexander, and Larry
President; and that they and Frederick were associates, but she would not say that they were close
friends.

 Donyell Frederick was a difficult witness for the State. He refused to take a formal
oath. He stated that he knew and associated with Harris, Alexander, and President, but that he
knew nothing about the alleged offense. He repeatedly claimed the privilege against self-incrimination under the Fifth Amendment to the United States Constitution. He was granted
immunity by the trial court upon the request of the State but still refused to answer questions and
was held in contempt by the court. Neither Harris nor Alexander testified or offered any
evidence. They rested when the State rested its case at the guilt/innocence stage of the trial.

 Appellant Alexander challenges the legal sufficiency of the evidence to support the
conviction. The standard for reviewing the legal sufficiency of the evidence is whether, viewing
the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have
found beyond a reasonable doubt the essential elements of the offense charged. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Villalon v. State,
791 S.W.2d 130, 132 (Tex. Crim. App. 1990); Skillern v. State, 890 S.W.2d 849, 879 (Tex.
App.--Austin 1994, pet. ref'd). The standard of review is the same in both direct and
circumstantial evidence cases. Geesa v. State, 810 S.W.2d 154, 155 (Tex. Crim. App. 1991);
Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990). In our review of the legal
sufficiency of the evidence, we must consider all the evidence which the jury was permitted,
properly or improperly, to consider. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App.
1993), cert. denied, U.S. , 114 S. Ct. 1579, 128 L. Ed. 2d 111 (1994); Rodriguez v. State,
819 S.W.2d 871, 887 (Tex. Crim. App. 1991). In addition, the evidence must be measured
against the charge that was given to the jury. Jones v. State, 815 S.W.2d 667, 668 (Tex. Crim.
App. 1991); Skillern, 890 S.W.2d at 877. In its jury charge, the trial court tracked the allegations
of the indictment and also charged on the law of parties. See Tex. Penal Code Ann. § 7.01 (West
1994).

 The jury is the exclusive judge of the facts proved and the weight to be given to
the testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). The jury is the judge
of the credibility of the witnesses, Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App.
1992), and is free to accept or reject any or all of the evidence presented by either party. Saxton
v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1987); Beardsley v. State, 738 S.W.2d 681, 684
(Tex. Crim. App. 1987). The reconciliation of evidentiary conflicts is solely within the province
of the jury. Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995); Bowden v. State,
628 S.W.2d 782, 784 (Tex. Crim. App. 1982). It is not the reviewing court's duty to disregard,
realign, or weigh the evidence. Mareno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

 Appellant Alexander argues that neither Langford nor Lefler could identify him as
being at the scene. This is true. Lefler did, however, place Harris at the scene in the company
of two other men. Nine days later, appellant, Harris, and President were together in a car that
was stopped for a traffic violation in Austin. A 9 millimeter pistol, later shown to have been used
in the offense, was found under the seat where Alexander was sitting after he had been seen
placing something under the seat. Alexander's argument that he was not connected with any of
the guns used in the offense is not correct. Alexander also overlooks Rhynes's testimony
describing Alexander's admissions that he committed the offense charged along with President and
another man, and that one of the guns used had been seized by the police in Austin. Other
evidence showed that the shell casings found had been fired by the 9 millimeter pistol seized. 
Appellant asks that we not consider the testimony relating the 9 millimeter pistol because it was
the fruit of an illegal stop and seizure and that we disregard Frederick's unsworn testimony. As
noted earlier, the appellate court, in reviewing evidence sufficiency claims, must consider all of
the evidence presented whether properly or improperly admitted. See Fuller v. State, 827 S.W.2d
919, 930-31 (Tex. Crim. App. 1992); Nickerson v. State, 810 S.W.2d 398, 400 (Tex. Crim. App.
1991).

 Viewing the evidence in the light most favorable to the jury's verdict, we conclude
that any rational trier of fact could have found beyond a reasonable doubt all the essential elements
of the offense charged. We overrule appellant's contention that the evidence was legally
insufficient to support the conviction.

 Appellant also claims that the evidence is factually insufficient to sustain the
conviction. In Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996), the court
concluded that courts of appeals are vested with the authority to review fact questions in criminal
cases. The proper standard of review for factual sufficiency of the elements of the offense is the
one set forth in Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely
filed). Clewis, 922 S.W.2d at 129. This standard requires the court of appeals to view the
evidence without the prism of "in the light most favorable to the prosecution" and set aside the
verdict or judgment only if it is so contrary to the overwhelming weight of the evidence to be
clearly wrong and manifestly unjust. Id. at 129. Appellant recognizes the standard, calls attention
to the same facts as in his challenge to the legal sufficiency of the evidence, but fails to discuss
just how the application of the standard would entitle him to the relief he seeks. See Tex. R. App.
P. 74(b). The evidence has been detailed and applying the Stone-Clewis standard we cannot say
that the jury's verdict is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and manifestly unjust. Appellant's contention is without merit.



UNSWORN TESTIMONY


 In the third point of error, appellant contends that the "trial court erred in allowing
unsworn testimony to be heard at trial." See Tex. R. Crim. Evid. 603. The point of error refers
to Donyell Frederick, a witness for the State. Because the background here 

underlies both points of error one and two, the facts will be examined in greater detail.

 Rule 603 provides:



Before testifying, every witness shall be required to declare that he will testify
truthfully by oath or affirmation administered in a form calculated to awaken his
conscience and impress his mind with his duty to do so.



Tex. R. Crim. Evid. 603. This rule continues a traditional procedure. 1 Steven Goode, Olin Guy
Wellborn III & M. Michael Sharlot, Guide to the Texas Rules of Evidence: Civil and Criminal,
§ 6.03 at 523 (Texas Practice 1993) (hereinafter Goode). As a rule, unsworn testimony is
inadmissible and is not legal evidence on which a judgment can be based. See 24 Tex. Jur. 3d,
Criminal Law, § 3264 at 651-52 (1982).

 With this background, we turn to the facts of the instant case. Donyell Frederick
was more than the ordinary reluctant witness. When called by the State, his request to consult
with his attorney was granted. Upon being recalled with the jury in the box and his attorney
present, Frederick refused to be sworn by the trial court. He did not claim any religious beliefs
against swearing nor did he ask to be sworn in any particular manner. He quickly stated that he
had told the prosecutors that he was not going to testify, that he did not have anything to do "with
this case," and that his attorney had informed him that he did not have to testify. In response to
the trial court's inquiry as to whether he was claiming a privilege, he answered: "No, not really." 
Thereupon, the trial court informed Frederick that everybody had an obligation to testify unless
a privilege was claimed; that Frederick would be required to tell the truth; that if he did not, he
could be punished for perjury; and that the State and the defense had a right to call him as a
witness.

 The interrogation then commenced and the prosecutor elicited from Frederick his
name and that he lived in Killeen in the fall of 1993. Thereupon, an objection was made for the
first time that Frederick was not under oath. The objection was overruled and the interrogation
continued. Frederick acknowledged that he and Nicole Broadway had a young son. When asked
if he knew the defendants and Larry President, a second "lack of oath" objection was overruled. 
Frederick answered: "We was associates. We knew each other. That is it." When inquiry was
made if he had told the Killeen police that his associates had admitted their participation in the
instant offense, another "no oath" objection was overruled, and the request to remove the jury was
denied.

 The trial court again addressed Frederick, reminding him that he was subject to
perjury, and elicited from him that he knew the difference between telling the truth and not telling
the truth. When asked by the court if he would tell the truth, Frederick stated: "I don't know
nothing I can tell. You keeping asking me questions. The questions I can answer, I answer. The
answers I can't answer, I am not going to answer." The court concluded that Frederick
understood the perjury law. The record then reflects:



The Court:  Well, let me just advise you, sir, you are required to tell the truth, the
whole truth and nothing but the truth. Do you understand that?


The Witness:  Yes, sir.


The Court:  Okay. Do you understand what the laws of perjury are in Texas and
that if you don't tell the truth that you can be punished for aggravated perjury for
not telling the truth?


The Witness:  Yes, sir.



 The interrogation resumed with the prosecutor asking basically the same
question--whether Frederick told Officer St. John that the defendants had admitted their
involvement in the instant offense. Frederick responded by claiming the Fifth Amendment's
privilege against self-incrimination. When Frederick denied any involvement in the instant
offense, the prosecutor informed him that he could not incriminate himself, but was refusing to
incriminate "the defendants." Frederick stated that he did not "know what happened in that
place," and took the "Fifth" in response to the same question repeatedly asked. When reminded
by the prosecutor that he "was under oath," Frederick expressed the subjective view that he was
not under oath, but acknowledged that he was subject to the laws of perjury. The same question
was repeated and Frederick took the "Fifth." The prosecutor then offered "immunity" to
Frederick with the court's approval. When the same question was repeated, the prosecutor stated
that he was laying a predicate for impeachment of the State's own witness. An objection ensued
along with a second request to remove the jury. The jury was finally removed. Thereafter, the
immunity issue was again raised and the trial court granted the prosecutor's offer of "total
immunity," both transactional and use immunity. Frederick was informed that he could no longer
rely on the Fifth Amendment. Frederick stated he would not accept immunity and was allowed
to confer with his attorney. Thereafter, when the same form of question was asked, Frederick
stated: "I am not going to testify. I am not going to say nothing." Frederick was then held in
contempt of court.

 The trial court overruled a motion to instruct the jury to disregard Frederick's
testimony for the lack of an oath. The trial court, with appellant's approval, did instruct the jury
that Frederick had been granted immunity, had refused to testify, and had been held in contempt.

 Frederick was not under oath when the first two questions were asked and answered
revealing only his name and his location in Killeen in the fall of 1993. There was no objection
to the questions. Thus, there was a waiver of any error. See Beck v. State, 719 S.W.2d 205,
211-14 (Tex. Crim. App. 1986); see also Castillo v. State, 739 S.W.2d 280, 298 (Tex. Crim.
App. 1987); Gonzales v. State, 748 S.W.2d 510, 511-12 (Tex. App.--Houston [1st Dist.] 1988,
pet. ref'd); Solis v. State, 647 S.W.2d 95, 98 (Tex. App.--San Antonio 1983, no pet.). The
testimony elicited was hardly incriminating.

 After the objection to the lack of an oath, Frederick related only that he and Nicole
Broadway had a young son, that he knew the defendants and Larry President, and that they were
"associates." This evidence was cumulative of Broadway's testimony that related the same facts
without objection. The improper admission of evidence is not reversible error when the same
facts are proven by other unobjected-to testimony. Anderson v. State. 717 S.W.2d 622, 626-27
(Tex. Crim. App. 1986); Miranda v. State, 813 S.W.2d 724, 739 (Tex. App.--San Antonio 1991,
pet. ref'd).

 The question of whether Frederick had informed the Killeen Police Department or
Officer St. John that appellant and his companions had admitted committing the instant offense
was never answered. Subsequently, the questioning by the court that resulted in Frederick
acknowledging that he was required to tell the truth and knew that he was subject to the laws of
perjury constituted an affirmation sufficient to meet the requirements of the law. The obligation
to tell the truth may take many forms. Rhea v. State, 705 S.W.2d 165, 170 (Tex.
App.--Texarkana 1985, pet ref'd). (2) While the procedure is not to be emulated, we conclude from
the point Frederick acknowledged his obligation to tell the truth, he was under "oath" within Rule
603. Thereafter, however, Frederick never answered the question repeatedly asked. In this
regard, we observe that Officer St. John testified, without objection, that he received information
from Frederick that led to the discovery of a 9 mm. weapon in Austin. On cross-examination,
appellant elicited from St. John that Frederick had connected appellant "to the case." See
Anderson, 717 S.W.2d at 626-27. Failure to administer a timely oath or affirmation was harmless
error beyond a reasonable doubt. Tex. R. App. P. 81(b)(2). The third ground of error is
overruled.



INTERVENTION BY THE COURT


 The first point of error contends that the "trial court intervention and comments to
and concerning witnesses prejudiced appellant's right to a fair trial under the Sixth Amendment
to the United States Constitution." The stated point is somewhat difficult to follow as the
argument is directed to a single witness, Donyell Frederick, and to the actions of the prosecutor
as well as the trial court. Generally, appellant complains that the trial court trespassed on the
jury's right to assess the credibility of the witnesses. We are referred to fourteen pages of record
where appellant contends that Frederick was subjected to admonishments for exercising his Fifth
Amendment privilege against self-incrimination. Appellant fails to point out where the trial court
"intervened," where an objection was made to such "intervention," or where any ruling was
obtained on any objection. See Tex. R. App. P. 52(a). Nothing appears to have been preserved
for review. An appellate court is not required to examine the record page by page and speculate
on what appellant might have reference to on appeal. Frederick was a reluctant witness and
presented some difficulties for the trial court to resolve as reflected by our discussion concerning
the third point of error. After Frederick's appearance on the witness stand, the trial court, at
appellant's request, instructed the jury to disregard any instructions given by the court to
Frederick and any comments made. The court told the jury that legal rulings or comments were
not intended to have any influence on the jury who was the trier of facts. After the court's
instruction, appellant asked for no further relief.

 Appellant relies upon Marlow v. State, 537 S.W.2d 8 (Tex. Crim. App. 1976), to
support his contention that the trial court's intervention deprived him of a fair trial. Appellant
does not explain how Marlow is controlling or even persuasive in the instant case. Marlow
involved a claimed error in the jury charge by assuming facts damaging to the defendant. Id. at
11. Marlow is distinguishable on the law and the facts. It did not involve the Sixth Amendment.

 Adding a multifarious flavor to the point of error, appellant also complains of
actions of the prosecutor. These matters are simply listed in the brief. To none of these matters
was an objection lodged so as to preserve error on appeal. See Tex. R. App. P. 52(a). Failure
to make a timely and specific objection waives any error. See Russell v. State, 665 S.W.2d 771,
778 (Tex. Crim. App. 1983), cert. denied, 465 U.S. 1073 (1984). The first point of error is
overruled.



TRIAL COURT COMMENTS


 In the second point of error, appellant urges that the "trial court's comments were
an impermissible comment on the weight of the evidence which denied appellant his right to a fair
trial under the Sixth Amendment to the United States Constitution." Appellant relies upon article
38.05 which provides:



 In ruling upon the admissibility of evidence, the judge shall not discuss or
comment upon the weight of the same or its bearing in the case, but shall simply
decide whether or not it is admissible; nor shall he, at any stage of the proceeding
previous to the return of the verdict, make any remark calculated to convey to the
jury his opinion of the case.



Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979).

 To constitute reversible error in violation of the statute prohibiting the trial judge
from making any remark conveying to the jury his opinion of the case, the comment must be such
that it is reasonably calculated to prejudice a defendant's rights or to benefit the State. Williams
v. State, 834 S.W.2d 502, 505 (Tex. App.--Fort Worth 1992, pet. ref'd). To preserve any error
for review, there must be a timely and proper objection. Tex. R. App. P. 52(a). Mestiza v.
State, 923 S.W.2d 720, 724 (Tex. App.--Corpus Christi 1996, no pet.) (citing Minor v. State, 469
S.W.2d 579, 580 (Tex. Crim. App. 1981)); Lookingbill v. State, 855 S.W.2d 66, 77 (Tex.
App.--Corpus Christi 1993, pet. ref'd). The failure to object constitutes a waiver. Williams, 834
S.W.2d at 505.

 At the outset, appellant simply calls attention to "comments" mentioned in the first
point of error, but most of these involved the prosecutor, not the trial court. There was no
showing that any trial court comment was reasonably calculated to prejudice appellant's right or
to benefit the State. Moreover, there were no objections. Any error was waived.

 Next, appellant directs our attention to a trial court's oral instruction to the jury. 
When the court took a recess to work on the jury charge at the guilt/innocence stage, it told the
jury:



 You must remember now that all the instructions that you have received up to
this point are still in effect, and you have to keep those in mind if you were to
violate any of the instructions at this point, it could still cause a mistrial or a
reversal or something like that after a waste of all this time. So be sure you
remember and follow all the instructions that you received. Don't talk to anybody
or let anybody talk to you or give you any information.



 Appellant seizes upon the phrase "a waste of all this time" but fails to point out how
this constituted a comment on the weight of evidence when incorporated in the quoted jury
instruction. The jury instruction was not reasonably calculated to prejudice appellant's right, or
to benefit the State. Moreover, there was no objection to the jury instruction. Any error was
waived. The second point of error is overruled.



INTERJECTING FACTS NOT IN EVIDENCE


 Appellant's fourth point of error contends that the "trial court erred in allowing the
prosecutor to interject facts not in evidence into the trial." Appellant lists four instances in his
brief. First, he asserts that the prosecutor testified for the witness. It was elicited from Officer
St. John that the photographs identified earlier as having been used in a "line-up" may not have
been the correct ones and that photographs with "the proper numbers" were outside the
courtroom. The prosecutor then asked and obtained the court's approval for the witness to step
outside the courtroom to secure the correct photographs. Second, it is claimed that at another
point the prosecutor led the witness. There was no objection to either the testimony or the
procedure so as to preserve error. Tex. R. App. P. 52(a).

 Next, appellant complains that the prosecutor led the witness and testified for the
witness. We are given only record page references. When Nicole Broadway was testifying, two
objections that the prosecutor was leading the witness were overruled. In each situation, the
prosecutor had not completed the question. Despite the trial court's ruling, the questions were
rephrased and answered without objection. Rule 610(c) provides in part that leading questions
should not be used on direct examination of a witness except as may be necessary to develop his
testimony. Tex. R. Crim. Evid. 610(c). The rule clearly contemplates that some leading is
acceptable at the trial court's discretion. Myers v. State, 781 S.W.2d 730, 733 (Tex. App.--Fort
Worth 1989, pet. ref'd). Rule 610(c) has not changed the former case law that permitting leading
questions on direct examination is a matter within the sound discretion of the trial court and that
no abuse of discretion is shown unless the defendant can show that he was unduly prejudiced by
virtue of such questions. Newsome v. State, 829 S.W.2d 260, 270 (Tex. App.--Dallas 1992, no
pet.). Appellant has made no such showing.

 Lastly, appellant claims that the prosecutor assumed the prerogative of the trial
court in admonishing the witness Frederick in front of the jury. Here again, we are merely
referred to a record page number. At one point when Frederick invoked the Fifth Amendment,
he was informed by the prosecutor that under the law a witness can only do so on the ground that
his testimony may tend to personally incriminate him in the commission of a crime. The objection
that such admonishment should come from the trial court was overruled. In this instance, as in
the others, appellant failed to show how the prosecutor improperly interjected facts not in
evidence. The fourth point of error is overruled.



MOTION TO SEVER


 The fifth point of error asserts that the trial court erred in denying appellant's
motion to sever his trial from that of the co-defendant Harris. Appellant relies upon article 36.09
of the Code of Criminal Procedure which provides:



 Two or more defendants who are jointly or separately indicted or complained
against for the same offense or any offense growing out of the same transaction
may be, in the discretion of the court, tried jointly or separately as to one or more
defendants; provided that in any event either defendant may testify for the other or
on behalf of the state; and provided further, that in cases in which, upon timely
motion to sever, and evidence introduced thereon, it is made known to the court
that there is a previous admissible conviction against one defendant or that a joint
trial would be prejudicial to any defendant, the court shall order a severance as to
the defendant whose joint trial would prejudice the other defendant or defendants.



Tex. Code Crim. Proc. Ann. art. 36.09 (West 1981) (emphasis added).

 Severance formerly was always mandatory. Article 36.09 represents a substantial
departure from the former law in that the "right" to severance is now "extremely limited." See
Latham v. State, 656 S.W.2d 478, 480 (Tex. Crim. App. 1983). The statute has been interpreted
as dividing the grounds for severance into mandatory and discretionary ones. Robinson v. State,
449 S.W.2d 239, 241 (Tex. Crim. App. 1969); 42 George E. Dix & Robert O. Dawson, Criminal
Practice and Procedure § 33.27 at 360 (Texas Practice 1995). The mandatory ground for
severance, that one defendant has "a previous admissible conviction," is applicable only when one
defendant has no prior criminal record or at least no prior admissible conviction and the co-defendant has a prior conviction that is admissible. If both defendants have prior admissible
convictions, the request for severance must be based on the fact that a joint trial would be
prejudicial. This latter ground is addressed to the sound discretion of the trial court. See Dawson
v. State, 477 S.W.2d 277, 279 (Tex. Crim. App. 1972); Robinson, 449 S.W.2d at 241.

 Appellant claims error in the denial of his motion to sever because co-defendant
Harris had a prior admissible conviction for aggravated robbery and because his defense was
totally inconsistent with that of the co-defendant. The record shows that appellant and Harris
were separately indicted for the same offense growing out of the same transaction. The State,
however, filed a motion for joinder of parties. Appellant followed by filing a motion to sever
based only on the mandatory ground for severance. The co-defendant also filed a motion to sever,
but that motion is not in this appellate record. See Tex. R. App. P. 50(d). These latter motions
were premature as there had not been a joinder of parties. They were obviously filed in
anticipation of a favorable ruling on the issue of joinder.

 On January 27, 1995, a hearing on the State's motion for joinder was heard by
Judge Morris. The motion was taken under advisement. On February 17, 1995, another hearing
was conducted on the same motion before a different judge. At that hearing, it was pointed out
by the prosecutor that the co-defendant's prior conviction was on appeal and not admissible at
trial, and that appellant had been granted probation in his cases and that these convictions were
not final and would not be used at trial. The trial court took the matter under advisement and later
granted the State's motion to join the parties for trial. After the joinder, we find no hearing and
no ruling on appellant's motion to sever. (3)

 On March 20, 1995, co-defendant Harris "reurged" his motion to sever,
particularly on the basis that a joint trial would be prejudicial to Harris because of appellant's
extraneous offenses. This record does not reflect when Harris originally "urged" his severance
motion. Under any circumstances, appellant joined Harris in the "reurging." Counsel for Harris
orally argued that the traffic stop in Austin and the finding of a weapon used in the instant offense
under appellant's seat would be admissible against appellant at a joint trial, and that this would
prejudice Harris and deny him a fair trial. Counsel acknowledged that the same evidence would
show that he was asleep in the car at the time of the traffic stop. No evidence was offered by
Harris or appellant before Harris's motion to sever was overruled. Unsworn assertions of fact
by an attorney are not regarded as evidence. See Loveless v. State, 800 S.W.2d at 940, 945 (Tex.
App.--Texarkana 1990, pet. ref'd). Article 36.09 provides for severance, and merely obtaining
an adverse ruling upon the issue is not sufficient to preserve error for review. Dix, § 33.26 at
359. The failure to present evidence is the most frequent basis for denial of severance. Id.; see
also Snow v. State, 721 S.W.2d 943, 945 (Tex. App.--Houston [1st Dist.] 1986, no pet.); Rejski
v. State, 715 S.W.2d 832, 834 (Tex. App.--Houston [14th Dist.] 1986), overruled on other
grounds, Rutledge v. State, 749 S.W.2d 501 (Tex. Crim. App. 1988). Moreover, no error is
preserved for review when there is a failure to present evidence on the adopted motion of a co-defendant for severance. Hudson v. State, 794 S.W.2d 883, 885 (Tex. App.--Tyler 1990, no pet.). 
At the first hearing on the State's motion for joinder, appellant did get the trial court to take
judicial notice of Harris's prior conviction, but this was a different and subsequent hearing. And
there was, as noted, no hearing on appellant's independent motion to sever.

 Appellant urges for the first time on appeal that there was error in denying his
severance motion because his defense was totally inconsistent with that of the co-defendant. He
bases this claim on the fact that, at trial, Lefler was able to identify Harris as the man who
grabbed her around the neck and pushed her to the floor during the instant offense, but that she
was unable to identify appellant as one of the other two men. This contention was not a part of
appellant's motion for severance and never presented to the trial court. See Tex. R. App. P.
52(a). A trial motion or objection stating one legal basis may not be used to support a different
legal theory on appeal. Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

 At trial, neither appellant nor Harris testified and their prior convictions were not
introduced before the jury. A trial court does not abuse its discretion when the allegations in the
severance motion and the proof, if any, offered in support thereof are not borne out by events at
trial. See Morales v. State, 466 S.W.2d 293, 296 (Tex. Crim. App. 1971); Williams v. State, 630
S.W.2d 866, 867 (Tex. App.--Houston [1st Dist.] 1982, no pet.). An appellate court will find an
abuse of discretion by the trial court in refusing a severance motion only when a defendant has
satisfied the "heavy burden" of showing clear prejudice. Metoyer v. State, 860 S.W.2d 673, 679
(Tex. App.--Fort Worth 1993, pet. ref'd); Loveless, 800 S.W.2d at 945. We find no abuse of
discretion in the overruling of the motion for severance.



SEARCH AND SEIZURE


 In the sixth point of error, appellant contends that the trial "court erred in denying
appellant's motion to suppress evidence seized subsequent to a traffic stop." Appellant does not
direct our attention to any pretrial motion to suppress. See Tex. Code Crim. Proc. Ann. art.
28.01(6) (West 1989). We are directed only to a hearing at the trial on the merits outside the
presence of the jury apparently to determine the admissibility of evidence seized after the traffic
stop. (4)

 At the hearing, Austin Police Officer Robert Hester testified that he was on patrol
on the night of December 11, 1993, which was nine days after the instant offense. At about 9:57
p.m., Hester observed a four-door Cadillac automobile with neither the driver nor the front seat
passenger wearing seat belts. Hester followed the vehicle and turned on the overhead lights of
his police vehicle. Officer Hester then saw the front seat passenger make a furtive movement by
reaching down with both hands to place something under the car seat. This furtive gesture caused
Hester concern for his own safety. The Cadillac stopped and a backup officer, David Socha,
arrived. Hester told Socha about the furtive movement. They approached the car cautiously for
they were in fear of their safety. The driver told Hester that his name was Karl Dickens (later
shown to be Larry President) and that he had no driver's license. Appellant was the front seat
passenger. He told Officer Socha that his name was Tony Rome. The men had no identification
and the officers were suspicious of the names given. A third man was asleep in the rear seat. 
Appellant and President were removed from the car and frisked for weapons at the rear of the
vehicle. No weapons were found. Appellant claimed to live only a few blocks from the scene,
but he could not give the address. He admitted that he knew the other two men as he had been
"associated" with them in Bell County. The officers knew from police reports that men from the
Fort Hood--Bell County area had been coming into Austin committing robberies and engaging in
fighting, shootings, and other offenses. The officers discovered the car was not registered to any
occupants. Officer Hester had observed the furtive movement, knew one man was still in the car,
and based on his experience and training, had concern for his safety. He made a limited frisk or
"quick sweep" under the front seat and found the 9 millimeter pistol. After the finding of the
pistol, Hester arrested appellant for unlawfully carrying a firearm and arrested President for the
failure to have a driver's license. The third man was identified as co-defendant Harris. Harris
gave a false name at the time, but he was released because it was not believed that he had violated
any law. Appellant and President were taken to jail and the Cadillac was impounded. At the
conclusion of the hearing, appellant objected to the admission of the pistol solely on the ground
that no probable cause to search was shown. The objection was overruled. Officers Hester and
Socha both testified before the jury and the pistol was admitted into evidence.



STANDING


 The State urges that appellant has no standing to complain of the search, "quick
sweep," or frisk that revealed the 9 millimeter weapon. Standing is an individual's right to
complain about an allegedly illegal governmental search, and thus to exclude evidence. The
purpose of both the Fourth Amendment to the United States Constitution, and article I, section
9 of the Texas Constitution "is to safeguard an individual's legitimate expectation of privacy from
unreasonable governmental intrusions." Richardson v. State, 865 S.W.2d 944, 948 (Tex. Crim.
App. 1993). An accused has standing to challenge the admission of evidence obtained by a
governmental intrusion only if he had a legitimate expectation of privacy in the place invaded. 
Rakas v. Illinois, 439 U.S. 128, 143 (1978); Richardson, 865 S.W.2d at 948-49; Fuller v. State,
829 S.W.2d 191, 202 (Tex. Crim. App. 1992).

 The accused, because he has greater access to the relevant evidence, has the burden
of proving facts establishing a legitimate expectation of privacy. Calloway v. State, 743 S.W.2d
645, 650 (Tex. Crim. App. 1988); Wilson v. State, 692 S.W.2d 661, 667 (Tex. Crim. App. 1985)
(op. on reh'g). To carry this burden, the accused normally must prove: (1) that by his conduct,
he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve
something as private, and (2) that the circumstances existed under which society was prepared to
recognize his subjective expectation as objectively reasonable. Smith v. Maryland, 442 U.S. 735,
740 (1979); Richardson, 865 S.W.2d at 948-49. The following nonexclusive factors are relevant
to the court's determination of whether the accused's subjective expectation was one that society
was prepared to recognize as objectively reasonable: (1) whether the accused had a property or
possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3)
whether he had complete dominion or control and the right to exclude others; (4) whether, before
the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether
he put the place to some private use; and (6) whether his claim of privacy is consistent with
historical notions of privacy. Calloway, 743 S.W.2d at 651.

 Turning to the instant case, we observe that mere occupancy in a vehicle in and of
itself, does not establish a legitimate expectation of privacy. Kelley v. State, 807 S.W.2d 810,
815 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd). Simply because a person is a passenger
in a car with the permission of the owner is not determinative of whether he has a legitimate right
of privacy. Lewis v. State, 664 S.W.2d 345, 347 (Tex. Crim. App. 1984). If a passenger in a
vehicle fails to assert a possessory interest in the vehicle or the property seized, he does not have
a legitimate expectation in the vehicle. Meeks v. State, 692 S.W.2d 504, 510 (Tex. Crim. App.
1985). Appellant has not asserted any possessory interest in the Cadillac shown to be registered
to another and being driven by Larry President. He certainly does not assert any possessory
interest in the 9 millimeter weapon, the fruit of the search. Considering all the relevant factors
in Calloway, we find that appellant has failed to sustain his burden of proof and conclude that
appellant lacks standing to contest the search. United States v. Salvucci, 448 U.S. 83, 91-92
(1980); Kelley, 807 S.W.2d at 815. A reviewing court may properly sustain the trial court's
ruling on the objection on the ground that the evidence failed to establish standing as a matter of
law even though the issue was not raised in the court below. Wilson, 692 S.W.2d at 671; see also
State v. Klima, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996). The sixth point of error is
overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Chief Justice Carroll, Justices Kidd and Onion;* Chief Justice Carroll Not Participating

Affirmed

Filed: February 6, 1997

Do Not Publish








* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   See Tex. Penal Code Ann. §§ 15.01 & 19.03(a) (West 1994). The current code is cited for
convenience because the code amendments effective September 1, 1994, have no substantive effect
on the instant offense. The applicable law is the law in effect at time of the offense. See Act of
May 8, 1975, 64th Leg. R.S., ch. 203, § 4, 1975 Gen. Laws 476, 478 (Tex. Penal Code Ann.
§ 15.01, since amended); Act of April 16, 1985, 69th Leg., R.S., ch. 44, § 1, 1985 Tex. Gen.
Laws 434 (Tex. Penal Code Ann. § 19.03(a), since amended).
2.   Oaths and affirmations have long been used as a means of inducing witnesses to testify
truthfully. Goode, § 603 at 523. See Tex. Const. art. I, § 5, ; Tex. Code Crim. Proc. Ann. art.
1.17 (West 1977). "Oath is not defined by statute or rule nor is its form prescribed." 7A Michael
J. McCormick, Thomas D. Blackwell & Betty Blackwell, Title 2, § 70.02 at 193 (Texas Practice
1995). An oath has been described as "any form of attestation by which a person signified that he
is bound in conscience to perform an act faithfully and truthfully." Vaughn v. State, 177 S.W.2d
59, 60 (Tex. Crim. App. 1944). "Oath" includes affirmation. Tex. Penal Code Ann. §
1.07(a)(32) (West 1994). Webster defines an affirmation as "a solemn declaration made under
the penalties of perjury by a person who conscientiously declines to take an oath." Webster Ninth
New Collegiate Dictionary 61 (1983). Rule 603 was modeled after the Federal Rules of Evidence. 
The advisory notes to the Federal Rules of Evidence explain that an "[a]ffirmation is simply a
solemn undertaking to tell the truth; no special verbal formula is required." See Busby v. State,
907 S.W.2d 949, 954 (Tex. App.--Fort Worth 1995, pet. ref'd).
3.   Appellant directs our attention to a certain page of the statement of facts from the
pretrial hearing on the State's motion for joinder. No ruling on appellant's motion is
reflected there. It would have been premature if there had been such a ruling. Our
examination of the record does not reveal any ruling on appellant's motion to sever.
4.   We have not found any trial objection in the record prior to the hearing regarding the
exclusion of evidence obtained after the traffic stop.



icle or the property seized, he does not have
a legitimate expectation in the vehicle. Meeks v. State, 692 S.W.2d 504, 510 (Tex. Crim. App.
1985). Appellant has not asserted any possessory interest in the Cadillac shown to be registered
to another and being driven by Larry President. He certainly does not assert any possessory
interest in the 9 millimeter weapon, the fruit of the search. Considering all the relevant factors
in Calloway, we find that appellant has failed to sustain his burden of proof and conclude that
appellant lacks standing to contest the search. United States v. Salvucci, 448 U.S. 83, 91-92
(1980); Kelley, 807 S.W.2d at 815. A reviewing court may properly sustain the trial court's
ruling on the objection on the ground that the evidence failed to establish standing as a matter of
law even though the issue was not raised in the court below. Wilson, 692 S.W.2d at 671; see also
State v. Klima, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996). The sixth point of error is
overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Chief Justice Carroll, Justices Kidd and Onion;* Chief Justice Carroll Not Participating

Affirmed

Filed: February 6, 1997

Do Not Publish








* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   See Tex. Penal Code Ann. §§ 15.01 & 19.03(a) (West 1994). The current code is cited for
convenience because the code amendments effective September 1, 1994, have no substantive effect
on the instant offense. The applicable law is the law in effect at time of the offense. See Act of
May 8, 1975, 64th Leg. R.S., ch. 203, § 4, 1975 Gen. Laws 476, 478 (Tex. Penal Code Ann.
§ 15.01, since amended); Act of April 16, 1985, 69th Leg., R.S., ch. 44, § 1, 1985 Tex. Gen.
Laws 434 (Tex. Penal Code Ann. § 19.03(a), since amended).
2.   Oaths and affirmations have long been used as a means of inducing witnesses to testify
truthfully. Goode, § 603 at 523. See Tex. Const. art. I, § 5, ; Tex. Code Crim. Proc. Ann. art.
1.17 (West 1977). "Oath is not defined by statute or rule nor is its form prescribed." 7A Michael
J. McCormick, Thomas D. Blackwell & Betty Blackwell, Title 2, § 70.02 at 193 (Texas Practice
1995). An oath has been described as "any form of attestation by which a person signified that he
is bound in conscience to perform an act faithfully and truthfully." Vaughn v. State, 177 S.W.2d
59, 60 (Tex. Crim. App. 1944). "Oath" includes affirmation. Tex. Penal Code Ann. §
1.07(a)(32) (West 1994). Webster define