Dominic METOYER, Appellant,

v.

The STATE of Texas, State.

No. 2–92–011–CR.

Court of Appeals of Texas, Fort Worth.

Aug. 11, 1993.

David K. Chapman, Susan Ayres, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Betty Marshall, Charles M. Mallin, Edward L. Wilkinson, Terry Barlow, and Ann Crane, Assts. Fort Worth, for appellee.

Before FARRIS, LATTIMORE and WEAVER, JJ.

OPINION

FARRIS, Justice.

Dominic Metoyer, Carol Smith, Elijah Smith, Jr., and Sheila Green were tried together in the same criminal proceeding.[1]

---

**1.** Dominic Metoyer, Carol Smith, and Elijah Smith, Jr. were convicted and Sheila Green was acquitted.

Metoyer was convicted of aggravated possession with intent to deliver cocaine weighing over 400 grams. On appeal, he contends the trial court erred: in overruling his motion to suppress evidence recovered from the van in which he was a passenger; in refusing to instruct the jury on the issue of probable cause; in entering judgment against him because the verdict was against the great weight and preponderance of the evidence; in admitting photographs of certain vehicles; in denying his motion to sever; and in denying his motion for mistrial. Because: Metoyer lacked standing to challenge the legality of the search; there was no factual dispute over how the evidence was obtained; there is no factual sufficiency of the evidence review in criminal cases; the photographs accurately depicted the scene; Metoyer failed to demonstrate how Sammy Smith's statement exculpated him; the court's admonishment cured any harm caused by the improper comment; and Metoyer failed to preserve error on his jury argument complaint, his points of error are overruled.

The judgment is affirmed.

Metoyer's arrest and conviction stem from the surveillance of a house on Wichita Street in Fort Worth. The Department of Public Safety began its surveillance of the house after a confidential informant indicated drugs were to be transported there.

On the morning of October 27, 1989, at approximately 11:34 a.m., a black Suburban drove up to the house. Carol Smith and Sheila Green got out of the van, unloaded several bags and carried them into the house. They remained inside the house for about ten minutes and then they returned to the Suburban and drove off.

A short time later, an Aerostar van drove up to the house. Metoyer, Elijah Smith, and Sammy Smith, Elijah and Carol's brother,

exited the van and entered the house where they remained for approximately twenty minutes.[2] During this time, Metoyer carried a tan bag from the house and placed it into the van.

Metoyer and Elijah Smith then left in the Aerostar with Elijah Smith driving and, about fifteen minutes later, Sammy Smith drove off in a Dodge van. Several officers followed Metoyer and Elijah Smith and they stopped them for speeding. Elijah Smith admitted there were weapons inside the van, and an officer spotted what looked like narcotics in a partially zipped tan bag between the bucket seats. The officers asked Metoyer and Elijah Smith to step out of the vehicle. The officers found four kilos of cocaine in the tan bag, and at the rear of the van they found one kilo of cocaine, over 25 grams of marijuana, $2,000 in cash, and scales and beakers. They also found a piece of rock cocaine under the back seat of the patrol car used to transport Metoyer and Elijah Smith back to the house on Wichita Street.

In his defense, Metoyer claimed he had accepted a ride from his friend, Elijah Smith, from Los Angeles to Fort Worth to visit relatives. He stated the bags the women unloaded from the Suburban were his, and they were in the Suburban because there was no room in the Aerostar. He claims he went to the house on Wichita Street to pick up his bags,[3] and he knew nothing about the weapons, drugs, and drug paraphernalia the officers found in the tan bag and in the van.

In his first and second points of error, Metoyer complains the warrantless search of the Aerostar violated his constitutional right to be protected against unreasonable searches and seizures under the United States and Texas Constitutions. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.[4]

---

2. Sammy Smith was a co-defendant. However, he died before trial.

3. Metoyer had two pieces of luggage, a yellow and black bag and a dark blue suitcase. He denied ever carrying the tan bag to the Aerostar van.

4. The search and seizure provisions of the Texas Constitution warrant an analysis distinct from the federal constitutional analysis. *See Heitman*

*v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App. 1991). However, since violation of the Texas Constitution is determined by a reasonableness standard under the circumstances, *see Heitman v. State,* 836 S.W.2d 840, 842 (Tex.App.—Fort Worth 1992, no pet.), because Metoyer makes no distinction between the Constitutions with regard to this matter, and absent authority to the contrary, our discussion applies to both.

■ Before a Fourth Amendment claim can be raised, a defendant must establish standing to object to illegal conduct on the part of the police. *Roeder v. State,* 768 S.W.2d 745, 755 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). To establish standing to contest a search, a defendant must show that he had a legitimate expectation of privacy in the area searched. *United States v. Amuny,* 753 F.2d 1301, 1306 (5th Cir.) *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). A passenger in a vehicle does not have a legitimate expectation of privacy in a vehicle where he fails to assert a possessory interest in the vehicle or the property seized. *Meeks v. State,* 692 S.W.2d 504, 510 (Tex.Crim.App.1985).

■ Metoyer claims he had a possessory interest in the van because he spent twenty hours in it during the trip from California to Fort Worth. However, Metoyer did not present this theory to the trial court and he does not support it with any authority. Further, this theory is of questionable relevance because the search occurred after the trip had concluded, and logically so had any possible interest he could have asserted under this theory.

The evidence shows Metoyer had no possessory interest or reasonable expectation of privacy in the Aerostar. Metoyer admitted he did not own the van. Metoyer further conceded he had no possessory interest in the van by admitting it was in Elijah Smith's possession. Metoyer stated Elijah Smith offered him a ride, and Elijah Smith determined who else rode with them. Metoyer did not drive the vehicle nor did he pay for any of the gas.

Metoyer also claims he had a legitimate expectation of privacy in the van because he had a possessory interest in the luggage contained therein. However, at trial he denied any possessory interest in the bag or the narcotics seized. In light of this evidence, and a plethora of cases holding a defendant who fails to assert a possessory or ownership interest in an automobile or its contents lacks standing to challenge a search, we hold Metoyer lacks standing, as a passenger, to claim his constitutional rights have been violated. *See, e.g., United States v.*

*Greer,* 939 F.2d 1076, 1092–93 (5th Cir.), *reh'g ordered,* 948 F.2d 934 (1991) (passengers of an automobile who did not claim a possessory or ownership interest in the automobile or its contents had no standing to object to the search of the automobile or its other passengers); *Kelley v. State,* 807 S.W.2d 810, 815–16 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) (the defendant had no legitimate expectation of privacy and lacked standing to challenge the search which uncovered cocaine in a pickup truck occupied by the defendant, since the defendant failed to claim a possessory interest in either the truck or the cocaine seized).

■ Although Metoyer lacks standing as a mere passenger, he may challenge the search if it resulted from an infringement of *his own* Fourth Amendment rights. *See Harris v. State,* 713 S.W.2d 773, 775 (Tex.App.—Houston [1st Dist.] 1986, no pet.). The Court of Criminal Appeals, in *Lewis v. State,* 664 S.W.2d 345 (Tex.Crim.App.1984), decided that an appellant who challenges the validity of the initial stop of a vehicle questions infringement of his own Fourth Amendment rights, regardless of whether he has an expectation of privacy in the place to be searched. *Id.* at 348. Thus, Metoyer has standing to question the admissibility of the fruits of the search if the initial stop was unlawful.

■ For Fourth Amendment purposes, validity of arrest *or stop* should be determined solely by objective analysis of the facts surrounding the event. *Garcia v. State,* 827 S.W.2d 937, 943–44 (Tex.Crim.App.1992). An officer may stop and briefly detain persons if the officer reasonably suspects that some activity out of the ordinary is occurring or has occurred, there is some suggestion to connect the detained person with the unusual activity, and there is some indication that the activity is related to a crime. *State v. Adkins,* 829 S.W.2d 900, 901–02 (Tex.App.—Fort Worth 1992, pet. ref'd).

■ Here, police officers observed the Aerostar traveling at speeds up to 70 miles-per-hour through residential areas in which the speed limits were as low as 35 miles-per-hour. This activity constitutes a traffic of-

fense, for which there is reasonable suspicion sufficient to initiate a traffic stop. *See Goodwin v. State,* 799 S.W.2d 719, 727 (Tex.Crim. App.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991).

■ Metoyer claims the officers did not have a lawful right to conduct a surveillance of the house on Wichita Street. Therefore, when they followed Elijah Smith and Metoyer, they were not lawfully in a position to view the traffic violation. *Hamilton* refutes this claim because it demonstrates neither probable cause nor reasonable suspicion are necessary to authorize a surveillance. *See Hamilton v. State,* 590 S.W.2d 503, (Tex. Crim.App. [Panel Op.] 1979); [5] *Lopez v. State,* 652 S.W.2d 512, 512, 514 (Tex.App.— Houston [1st Dist.] 1983), *rev'd on other grounds,* 708 S.W.2d 446 (Tex.Crim.App. 1986).

■ In addition, objective and not subjective motives for an investigatory stop determine its validity. In *Garcia,* 827 S.W.2d at 943–44, the court held for Fourth Amendment purposes, the validity of an arrest or stop should be determined solely by objective analysis of facts surrounding the event. So long as the facts and circumstances show valid and legal detention, it serves no actual Fourth Amendment function to attempt to unearth subjective reasons for the detention. Thus, the appropriate limitation of an officer's discretion, under the Fourth Amendment, is the existence of a law and the actual commission of the offense. *Id.* at 944. Further, an arrest of a person is not a pretext arrest if the police would have arrested that person in any event, even if the police had not had an ulterior motive at the time of the arrest. *See Hamilton v. State,* 831 S.W.2d 326, 331 (Tex.Crim.App.1992).

Because the officers did not detain Metoyer until after they had witnessed the traffic offense, their actions were based on probable cause. *See Lopez,* 652 S.W.2d at 514–15. Therefore, the initial stop was not unlawful and Metoyer does not have standing to challenge the legality of the search. Points of error one and two are overruled.

Metoyer complains, in his third point of error, the jury should have been instructed on the issue of probable cause.

■ TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1993) provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Texas courts have uniformly held that the question of whether probable cause exists for a warrantless search is solely a question of law for determination by the court. *Marrs v. State,* 647 S.W.2d 286, 289 (Tex.Crim.App. 1983); *Boles v. State,* 137 Tex.Crim. 521, 132 S.W.2d 881, 882–83 (1939); *Lee v. State,* 126 Tex.Crim. 18, 70 S.W.2d 185, 187 (1934); *Ballestero v. State,* 640 S.W.2d 423, 427 (Tex. App.—San Antonio 1982, no pet). However, when the facts alleged to constitute probable cause are controverted, the defendant has the statutory right to have the jury charged

---

**5.** In *Hamilton v. State,* 590 S.W.2d 503 (Tex. Crim.App. [Panel Op.] 1979), police officers arrested appellant based upon information received from an unnamed informer, and upon observing him in a restaurant with a known drug dealer. The officers witnessed appellant hand the dealer money and receive a balloon, which she placed in her mouth. *Id.* at 504. When the appellant and the dealer left the restaurant, the officers closed in and made the arrest. *Id.* Appellant challenged the arrest on the basis that the informer upon whom the officers relied was nev-

er shown to meet the reliability test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The court held that for whatever reason the officers happened to be where they were, they witnessed the transaction in plain view from a public vantage point outside the restaurant. Upon witnessing appellant's actions, the officers had probable cause to arrest her independent of any information received from the alleged informer. *Hamilton,* 590 S.W.2d at 505.

on this issue. *Jordan v. State,* 562 S.W.2d 472, 473 (Tex.Crim.App. [Panel Op.] 1978).

■ Here, the facts concerning the stop of the van were undisputed. No defense witness contradicted the State's assertions the van Metoyer was traveling in had violated a traffic law and the tip it received came from a reliable informant. Because a trial court is only required to include a properly worded article 38.23 instruction in the jury charge if there is a factual dispute as to how the evidence was obtained, *see Thomas v. State,* 723 S.W.2d 696, 707 (Tex.Crim.App. 1986), and because there is no dispute concerning the facts surrounding the stop of the Aerostar van, no instruction was required. Point of error three is overruled.

■ In his fourth point of error, Metoyer claims the verdict is against the great weight and preponderance of the evidence and implores us to apply the standard of review set out in *Meraz v. State,* 785 S.W.2d 146, 155 (Tex.Crim.App.1990).[6] More specifically, Metoyer contends the State failed to affirmatively link the cocaine to him and failed to prove he knew he possessed cocaine or that he intended to possess it. Because Metoyer challenges essential elements of the offense with which he was charged and not an affirmative defense, the weight of the evidence cannot be reviewed. *See Pender v. State,* 850 S.W.2d 201, 203 (Tex.App.—Fort Worth 1993, no pet.). Point of error four is overruled.

■ Metoyer complains, in his fifth point of error, certain photographs should not have been admitted into evidence because they do not accurately depict the crime scene and are highly prejudicial.

Metoyer does not detail how these photos are unreliable and prejudicial, but claims they are inadmissible because they are "staged, re-enacted criminal acts" which the *Marras* court, in dicta, condemned.[7] *Marras v. State,* 741 S.W.2d 395, 404 (Tex.Crim.App.

1987). Metoyer's reliance on *Marras* is misplaced. The scenes depicted in the photographs he contests are merely those of the *physical appearance* of *vehicles* and the *contraband* as they appeared at the time they were seized. Therefore, the reasoning in *Marras* regarding "staged, re-enacted *criminal acts* or defensive issues involving *human beings*" does not apply to this case. *Id.* (emphasis supplied).

■ Instead, the test for the admissibility of photos is whether there is testimony showing they accurately depict the scene. *Stone v. State,* 574 S.W.2d 85, 89 (Tex.Crim. App. [Panel Op.] 1978). In the present case, Sergeant Alford testified the photographs accurately depicted the interiors and exteriors of the two vehicles and the seized contraband as they appeared that day. Therefore, the photographs were admissible and the trial judge did not abuse his discretion. *See Ramirez v. State,* 815 S.W.2d 636, 646–47 (Tex. Crim.App.1991). Point of error five is overruled.

In his sixth point of error, Metoyer claims his trial should have been severed from that of the other defendants because a statement inculpating them exculpated him.

■ A severance is discretionary with the trial court "unless one defendant has an admissible prior conviction while the person seeking the severance does not." *Dawson v. State,* 477 S.W.2d 277, 279 (Tex.Crim.App. 1972). Appellate courts will find the trial court abused its discretion in refusing a motion to sever only when the defendant satisfies the "heavy burden" of showing a clear prejudice. *Foster v. State,* 652 S.W.2d 474, 477 (Tex.App.—Houston [1st Dist.] 1983), *aff'd,* 693 S.W.2d 412 (Tex.Crim.App.1985).

■ The alleged exculpating statement was that of Sammy Smith. In the statement, Sammy Smith admits he helped load luggage, including a tan canvas bag, into Carol Smith's van. Further, he claims he traveled

---

6. In *Meraz,* the court held that when the defendant had the burden of proof on an affirmative defense, the appellate court must determine whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of

the evidence as to be manifestly unjust. *Meraz v. State,* 785 S.W.2d at 155.

7. The photographs were taken the same day as the arrests after the Aerostar was returned to the house on Wichita Street.

in a van with his brother, Elijah Smith, and a black man named Dominic.

On its face this statement does not exculpate Metoyer and he offers no explanation as to how it does. He only suggests the statement did not inculpate him which is not sufficient to establish it exculpated him. Because Metoyer did not support his motion to sever with evidence the statement would exculpate him, the trial court did not abuse its discretion by denying severance of his trial. Point of error six is overruled.

Metoyer complains, in his seventh point of error, the trial court should have granted him a mistrial after sustaining his objection and instructing the jury to disregard an unsolicited remark by a State's witness.

■■■ Injury from an improper comment by a witness or prosecutor is obviated when the court instructs the jury to disregard the remark, unless it is so inflammatory that its prejudicial effect cannot be removed by such an admonishment. *See Johnson v. State*, 698 S.W.2d 154, 167 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

■■■ The complained-of comment follows the State's question:

Q. In your experience as a police officer, when you find these amount [sic] of narcotics along with the other evidence found, including the weaponry, the scales, the scanner, portable telephones, several vehicles, in your experiences as a police officer, what does that tell you that—as to what is going to be done with these particular drug exhibits?

A. They're to be put back on the street for resale to be sold to my kids and your kids.

Metoyer argues, without authority, the reference to "my kids and your kids" was so inflammatory that the court's admonishment did not remove its prejudicial effect. Because Metoyer does not support his claim and because the comment was a rhetorical hyperbole, which we believe jurors are capable of understanding, we hold the court's instruction cured the error. Point of error seven is overruled.

■■■ In his eighth point of error, Metoyer contends a mistrial should have been granted because the prosecutor commented on his failure to testify.

During the guilt-innocence phase, all four co-defendants testified. At the punishment phase, Elijah Smith and Carol Smith testified, but Metoyer did not. Elijah Smith and Carol Smith refused to admit their guilt and steadfastly maintained their innocence throughout the punishment phase.

During closing argument, Metoyer's trial counsel stated:

The evidence—basically, there's no reason to repeat it at punishment stage. We didn't—*my client didn't take the stand.* We don't have a deadly weapon issue. There's no reason for us to come back up here and recant what we've already said. [Emphasis added.]

After making this comment, Metoyer's counsel continued to suggest to the jury that while the jury may have found him guilty, he was in reality not guilty.

■■■ In response, the prosecutor commented:

Now, the defendants in this case still refuse to admit their guilt. That may cause some concern to some of you. But if they admit their guilt at this stage of the proced [sic]—

This is the comment Metoyer complains about on appeal. It must be viewed in context, including what transpired after Metoyer objected. After Metoyer objected, the prosecutor offered to recant and rephrase his statement so there would be no misunderstanding, and he stated:

With regards to Elijah Smith, Jr., and Carol Smith, when asked whether or not they admit their guilt in this particular offense—and also, Dominic Metoyer in the first stage of the proceedings, when he was asked whether he admitted his guilt, none of them admitted their guilt.

Then in summary the prosecutor stated:

Ladies and gentlemen, it's not—I submit to you, that because the defendants didn't admit their guilt, that's not something that you should weigh on your conscious [sic].

You heard the evidence in the case. You made the decision on the evidence. And you should stand by that particular verdict.

Metoyer did not object to the rephrase or the summary statement as a comment on his failure to testify. Where the same argument is admitted without objection elsewhere, there is no reversible error. *See McFarland v. State*, 845 S.W.2d 824, 840 (Tex.Crim.App. 1992); *Tinney v. State*, 773 S.W.2d 364, 367 (Tex.App.—Fort Worth 1989, pet. ref'd). Because these statements are repetitious of the statement Metoyer complains of on appeal, he failed to preserve error for review. Point of error eight is overruled.

Judgment affirmed.