02-11-052-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00052-CR

 

 


 
 
 Ronnie Randy Warren
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 4 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I. 
Introduction

In
one issue, Appellant Ronnie Randy Warren appeals from his conviction for
possession of a controlled substance with the intent to deliver.  We affirm.

II. 
Factual and Procedural Background

The
State indicted Warren for possession of one gram or more but less than four
grams of methamphetamine with the intent to deliver, and Warren pleaded not
guilty.  At trial, River Oaks Police Department Officer Steve Nance testified
that he had initiated a traffic stop of Warren’s truck because it displayed
expired license plates.  After obtaining Warren’s proof of insurance, Officer
Nance went back to the patrol car to verify whether this insurance was
current.  Officer Nance testified that when he returned to Warren’s truck,
Warren was looking down at an aluminum tin can in his lap.[2] 
When Officer Nance asked Warren about the tin can, Warren looked up, “swapped
it off his lap,” and told Officer Nance that it contained pills for a back
injury.  Officer Nance testified that Warren opened the tin can without being
asked and that Officer Nance saw pills and “two small blue plastic baggies”
inside.  He also testified that while he could not see what was inside the
baggies, his training and experience led him to believe that the baggies were
narcotics packaging.

When
Officer Nance ordered Warren to exit the vehicle, Warren did not initially
comply but remained in his seat with his right hand “next to his side in between
the seats.”  When Warren finally complied, Officer Nance placed him in
handcuffs due to his noncompliance with verbal commands and because Officer
Nance “did not know what he was reaching for in the seats or where the blue
baggies that he had removed had been placed.”  Officer Nance asked Warren where
he had put the baggies, but Warren claimed that he did not know what Officer
Nance was talking about.  Officer Nance searched Warren’s person and the
interior of the truck for these baggies to no avail.[3] 
However, in the bed of the truck, Officer Nance noticed the baggies in between
the tool box and the side rail of the truck.[4]  These baggies contained a
combined 2.04 grams of methamphetamine and were admitted, over Warren’s
objection, as State’s exhibit 2A.

The
jury found Warren guilty of possession of methamphetamine with the intent to
deliver, and the trial court sentenced him to thirty years’ confinement.  This
appeal followed.

III. 
Suppression

In
his sole issue, Warren claims that the trial court abused its discretion by
admitting evidence that was illegally seized in violation of his federal and
state constitutional rights.[5]

A.  Standard of Review

As
with any suppression issue, we review the trial court’s ruling under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); see Neal v. State, 256 S.W.3d 264, 281 (Tex.
Crim. App. 2008), cert. denied, 555 U.S. 1154 (2009).  We give almost
total deference to a trial court’s rulings on questions of historical fact and
application-of-law-to-fact questions that turn on an evaluation of credibility
and demeanor, but we review de novo application-of-law-to-fact questions
that do not turn on credibility and demeanor.  Estrada v. State, 154
S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson v. State, 68 S.W.3d 644,
652–53 (Tex. Crim. App. 2002); Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).

Stated
another way, we must view the evidence in the light most favorable to the trial
court’s ruling.  Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim. App.
2007); State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When
the record is silent on the reasons for the trial court’s ruling, or when there
are no explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we infer the necessary fact findings that
would support the trial court’s ruling if the evidence, viewed in the light
most favorable to the trial court’s ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); Wiede,
214 S.W.3d at 25; see Best v. State, 118 S.W.3d 857, 862 (Tex. App.—Fort
Worth 2003, no pet.) (recognizing that when the suppression issue is raised at
trial, relevant trial testimony should be considered in deciding whether the
evidence supports the implied findings).  We then review the trial court’s legal
ruling de novo unless the implied fact findings supported by the record
are also dispositive of the legal ruling.  Kelly, 204 S.W.3d at 818–19.

B. 
Search and Seizure Challenge

The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.[6]  U.S. Const. amend. IV; Wiede,
214 S.W.3d at 24.  To suppress evidence because of an alleged Fourth Amendment
violation, the defendant bears the initial burden of producing evidence that
rebuts the presumption of proper police conduct.  Amador, 221 S.W.3d at
672; see Young v. State, 283 S.W.3d 854, 872 (Tex. Crim. App.), cert.
denied, 130 S. Ct. 1015 (2009).  A defendant satisfies this burden by
establishing that a search or seizure occurred without a warrant.  Amador,
221 S.W.3d at 672.  Once the defendant has made this showing, the burden of
proof shifts to the State, which is then required to establish that the search
or seizure was conducted pursuant to a warrant or was reasonable.  Id.
at 672–73; Torres v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford
v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  Because it is
undisputed that Officer Nance searched Warren’s vehicle and seized the evidence
without a warrant, Warren satisfied his burden of rebutting the presumption of
proper police conduct, and we turn to whether the State has shown that the search
and seizure was reasonable.  See Amador, 221 S.W.3d at 672–73.

Whether
a search and seizure is reasonable is a question of law that we review
de novo by examining the totality of the circumstances.  Kothe v. State,
152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004).  A search conducted without a
warrant is per se unreasonable unless it falls within one of the
“specifically defined and well established” exceptions to the warrant requirement. 
McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim. App.), cert. denied,
540 U.S. 1004 (2003).

One
such exception is that a police officer may lawfully search an automobile if he
has probable cause to believe that the vehicle contains evidence of a crime.  Neal, 256 S.W.3d at 282.  Probable
cause to search “exists where the known facts and circumstances are sufficient
to warrant a man of reasonable prudence in the belief that contraband or
evidence of a crime will be found.” 
Wiede, 214 S.W.3d at 24.  If the automobile exception applies, then the officer
may search “every part of the vehicle and its contents that may conceal the
object of the search.”  Neal,
256 S.W.3d at 282.

C.  Analysis

Citing
Arizona v. Gant, Warren argues that the search was unreasonable because
there was no concern that Warren would destroy or lose evidence of the crime
for which he was detained because he was detained for displaying expired
license plates and was already in police custody.  See 556 U.S. 332, 343,
129 S. Ct. 1710, 1719 (2009).  However, Gant was decided solely on the
basis of a search incident to an arrest and did not alter the automobile
exception to the warrant requirement.  See id. at 350–51, 129 S. Ct. at
1723–24.  The Court held that, absent certain justifications, a search of an
arrestee’s vehicle is unreasonable “unless
police . . . show that another exception to the warrant
requirement applies.”  See id. at 351, 129 S. Ct. at 1723–24.  The
automobile exception did not apply in Gant, but it applies in this case.
 See id. at 341, 129 S. Ct. at 1718.  Therefore, we turn to whether
Officer Nance had probable cause to search Warren’s truck pursuant to the
automobile exception.  See Neal, 256 S.W.3d at 282.

While
the record is silent on the reasons for the trial court’s ruling, the record
supports the trial court’s implied factual finding that Officer Nance observed
in Warren’s possession two small plastic baggies, which Officer Nance
concluded, based on his experience and training, were narcotics packaging.  See
Garcia-Cantu, 253 S.W.3d at 241.  Warren asserts that Officer Nance did not
know what was in the baggies and that possession of the baggies themselves was
not illegal.  However, Officer Nance did not need to know that the baggies
contained an illegal substance; instead, he needed knowledge of certain facts
that would warrant a reasonable person in the belief that they contained an
illegal substance.  See Wiede, 214 S.W.3d at 24, 26–28 (noting
that probable cause requires an evaluation of probabilities and determining
that the defendant’s possession of a clear plastic bag and the police officer’s
knowledge that drugs were commonly packaged in plastic bags contributed to
probable cause).

The
record also supports the trial court’s implied finding that Warren abruptly
removed the tin can from his lap when he saw Officer Nance at the window.  See
Garcia-Cantu, 253 S.W.3d at 241.  While Warren told Officer Nance that the tin
can’s contents were to treat a back injury, a reasonably prudent police officer
would be warranted in his belief that Warren’s furtive gestures suggested that
he possessed evidence of a crime.  See Wiede, 214 S.W.3d at 24, 26–28
(considering, in its probable cause analysis, the defendant’s suspicious act of
removing the plastic bag and placing it between his seat and the console).  In
addition, the record supports the trial court’s implied finding that Warren initially
refused to exit the truck and concealed his right hand by his side between the
seats.  See Garcia-Cantu, 253 S.W.3d at 241.  Such suspicious behavior would
have warranted a reasonably prudent officer in believing that a controlled
substance would be found in the truck, especially because the record reflects
that Officer Nance could not locate the baggies on Warren’s person and that Warren
denied knowing what plastic baggies Officer Nance was asking him about.  See
Wiede, 214 S.W.3d at 24, 26–28.

Therefore,
reviewing de novo the application of the law to the trial court’s implied
findings—that Officer Nance observed plastic baggies in Warren’s possession, that
Officer Nance knew the significance of the baggies, and that Warren behaved
suspiciously when Officer Nance confronted him—the totality of these
circumstances gave Officer Nance probable cause to search Warren’s truck for evidence
of a controlled substance.  See id. (holding that the officer had
probable cause to search the car when the defendant had a clear plastic bag in
his possession, the officer knew that drugs were commonly packaged in plastic
bags, and the defendant hid the plastic bag between the driver’s seat and the
console); Kelly, 204 S.W.3d at 818–19.

As
such, Officer Nance was permitted to search “every part of the vehicle and its
contents that may [have] conceal[ed] the object of the search,” even though, as
Warren asserts, Officer Nance did not see Warren place anything in the bed of
the truck.  See Neal, 256 S.W.3d at 282.  This searchable area encompassed
both the bed of the truck, which is where Officer Nance testified that he had
found the two original baggies, as well as the black plastic box, which Officer
Nance testified had concealed the two additional baggies.[7] 
See id.; Cummings v. State, 727 S.W.2d 348, 351 (Tex. App.—Houston
[1st Dist.] 1987, pet. ref’d) (holding that under the automobile exception,
probable cause to search the truck extended to the bed of the truck).  Because
the record, when viewed in the proper light and with the appropriate deference
to the trial court’s ruling, supports a finding that Officer Nance found the
two original baggies—State’s exhibit 2A—loose in the bed of the truck and found
the two additional baggies—State’s exhibit five—in the black plastic box on the
back floorboard, we infer that the trial court made these findings.  See
Garcia-Cantu, 253 S.W.3d at 241.  Reviewing de novo the application of the
law to the trial court’s implied factual findings regarding the location of State’s
exhibits 2A and five, Officer Nance properly searched for and seized this
evidence under the automobile exception to the warrant requirement.[8] 
See Neal, 256 S.W.3d at 282; Kelly, 204 S.W.3d at 818–19.  Therefore,
the search and seizure was reasonable under the Fourth Amendment, and the trial
court did not err by admitting this evidence.  U.S. Const. amend. IV; Amador,
221 S.W.3d at 672–73; Wiede, 214 S.W.3d at 24.  Accordingly, we overrule
Warren’s sole issue.

IV. 
Conclusion

Having
overruled Warren’s sole issue, we affirm the trial court’s judgment.

 

PER
CURIAM

PANEL: 
MCCOY, WALKER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 15, 2012









[1]See Tex. R. App. P. 47.4.





[2]The aluminum tin can was
admitted, over Warren’s objection, as State’s exhibit seven.





[3]However, on the back
floorboard, Officer Nance did find a black plastic box that was not admitted
into evidence but that contained two additional baggies with “some sort of
residue inside of them.”  These baggies were admitted, over Warren’s objection,
as State’s exhibit five.  In addition, State’s exhibits three, four, and six,
which were also admitted over Warren’s objection, consisted of more baggies and
a small digital scale that were found during a subsequent inventory search of
the vehicle.  Officer Nance stated that he did not have a warrant to conduct a
search of the vehicle.





[4]Warren agrees that Officer
Nance found these two baggies in the bed of the truck but argues that they were
concealed inside of a closed black plastic box.





[5]Both parties cite the
standard to be applied to a trial court’s ruling on a motion to suppress. 
While we find nothing in the record indicating that Warren filed a motion to
suppress, he preserved this claim by timely objecting during trial to the
admission of State’s exhibits 2A through seven.  See Ratliff v. State,
320 S.W.3d 857, 860 (Tex. App.—Fort Worth 2010, pet. ref’d) (“To preserve
error about the illegal seizure of evidence, a defendant must either file a
motion to suppress and obtain a ruling on the motion or timely object when the
State offers the evidence at trial.”).  Therefore, we will treat Warren’s
objection as an oral motion to suppress and analyze the trial court’s admission
of the complained-of evidence under that standard.  See Galitz v. State,
617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (“A ‘motion to suppress’
evidence is nothing more than a specialized objection to the admissibility of
that evidence.”).





[6]The search and seizure
provisions of the Texas constitution warrant an analysis distinct from the
federal constitutional analysis.  See Heitman v. State, 815 S.W.2d 681,
690 (Tex. Crim. App. 1991).  However, because Warren makes no distinction
between the constitutions with regard to this matter, and absent authority to
the contrary, our discussion applies to both.  See Metoyer v. State, 860
S.W.2d 673, 676 n.4 (Tex. App.—Fort Worth 1993, pet. ref’d) (noting that a
violation of the Texas constitution is also determined by a reasonableness
standard under the circumstances).





[7]Warren asserts that the
plain view doctrine did not justify the search of the black plastic box because
its illegal character was not immediately apparent.  However, the plain view
doctrine is not applicable here because the automobile exception alone gave
Officer Nance authority to search every part of the vehicle and its contents
that might have concealed the object for which he had probable cause to search. 
See Horton v. California, 496 U.S. 128, 135–36, 110 S. Ct. 2301,
2307 (1990) (recognizing that the plain view doctrine serves to supplement a
prior justification); Neal, 256 S.W.3d at 282.





[8]Warren does not directly
challenge the trial court’s admission of State’s exhibits three, four, six, and
seven into evidence.  However, to the extent that he raises these issues by
generally claiming that the trial court erroneously admitted evidence at trial,
we overrule these issues.  Indeed, State’s exhibit seven—the tin can—could have
concealed, and at one point did conceal, the object of Officer Nance’s search. 
See Neal, 256 S.W.3d at 282.  Therefore, Officer Nance’s search of the
tin can was permissible.  See id.  Also, State’s exhibits three, four,
and six were obtained during an inventory search, which Warren does not
address.  See Tex. R. App. P. 38.1(i); South Dakota v. Opperman,
428 U.S. 364, 369–72, 96 S. Ct. 3092, 3097–99 (1976) (discussing the
reasonableness of inventory searches).