

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00052-CR

RONNIE RANDY WARREN                                      APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In one issue, Appellant Ronnie Randy Warren appeals from his conviction for possession of a controlled substance with the intent to deliver. We affirm.

## II. Factual and Procedural Background

The State indicted Warren for possession of one gram or more but less than four grams of methamphetamine with the intent to deliver, and Warren

_____

[1]*See* Tex. R. App. P. 47.4.

pleaded not guilty. At trial, River Oaks Police Department Officer Steve Nance testified that he had initiated a traffic stop of Warren's truck because it displayed expired license plates. After obtaining Warren's proof of insurance, Officer Nance went back to the patrol car to verify whether this insurance was current. Officer Nance testified that when he returned to Warren's truck, Warren was looking down at an aluminum tin can in his lap.[2] When Officer Nance asked Warren about the tin can, Warren looked up, "swapped it off his lap," and told Officer Nance that it contained pills for a back injury. Officer Nance testified that Warren opened the tin can without being asked and that Officer Nance saw pills and "two small blue plastic baggies" inside. He also testified that while he could not see what was inside the baggies, his training and experience led him to believe that the baggies were narcotics packaging.

When Officer Nance ordered Warren to exit the vehicle, Warren did not initially comply but remained in his seat with his right hand "next to his side in between the seats." When Warren finally complied, Officer Nance placed him in handcuffs due to his noncompliance with verbal commands and because Officer Nance "did not know what he was reaching for in the seats or where the blue baggies that he had removed had been placed." Officer Nance asked Warren where he had put the baggies, but Warren claimed that he did not know what Officer Nance was talking about. Officer Nance searched Warren's person and

---

[2]The aluminum tin can was admitted, over Warren's objection, as State's exhibit seven.

2

the interior of the truck for these baggies to no avail.[3] However, in the bed of the truck, Officer Nance noticed the baggies in between the tool box and the side rail of the truck.[4] These baggies contained a combined 2.04 grams of methamphetamine and were admitted, over Warren's objection, as State's exhibit 2A.

The jury found Warren guilty of possession of methamphetamine with the intent to deliver, and the trial court sentenced him to thirty years' confinement. This appeal followed.

### III. Suppression

In his sole issue, Warren claims that the trial court abused its discretion by admitting evidence that was illegally seized in violation of his federal and state constitutional rights.[5]

---

[3]However, on the back floorboard, Officer Nance did find a black plastic box that was not admitted into evidence but that contained two additional baggies with "some sort of residue inside of them." These baggies were admitted, over Warren's objection, as State's exhibit five. In addition, State's exhibits three, four, and six, which were also admitted over Warren's objection, consisted of more baggies and a small digital scale that were found during a subsequent inventory search of the vehicle. Officer Nance stated that he did not have a warrant to conduct a search of the vehicle.

[4]Warren agrees that Officer Nance found these two baggies in the bed of the truck but argues that they were concealed inside of a closed black plastic box.

[5]Both parties cite the standard to be applied to a trial court's ruling on a motion to suppress. While we find nothing in the record indicating that Warren filed a motion to suppress, he preserved this claim by timely objecting during trial to the admission of State's exhibits 2A through seven. *See Ratliff v. State*, 320 S.W.3d 857, 860 (Tex. App.—Fort Worth 2010, pet. ref'd) ("To preserve error

## A. Standard of Review

As with any suppression issue, we review the trial court's ruling under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *see Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 1154 (2009). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Stated another way, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we infer the necessary fact findings that would support the

about the illegal seizure of evidence, a defendant must either file a motion to suppress and obtain a ruling on the motion or timely object when the State offers the evidence at trial."). Therefore, we will treat Warren's objection as an oral motion to suppress and analyze the trial court's admission of the complained-of evidence under that standard. *See Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) ("A 'motion to suppress' evidence is nothing more than a specialized objection to the admissibility of that evidence.").

trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Wiede*, 214 S.W.3d at 25; *see Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.) (recognizing that when the suppression issue is raised at trial, relevant trial testimony should be considered in deciding whether the evidence supports the implied findings). We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 818–19.

## B. Search and Seizure Challenge

The Fourth Amendment protects against unreasonable searches and seizures by government officials.[6] U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009). A defendant satisfies this burden by establishing that a search or seizure

---

[6]The search and seizure provisions of the Texas constitution warrant an analysis distinct from the federal constitutional analysis. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991). However, because Warren makes no distinction between the constitutions with regard to this matter, and absent authority to the contrary, our discussion applies to both. *See Metoyer v. State*, 860 S.W.2d 673, 676 n.4 (Tex. App.—Fort Worth 1993, pet. ref'd) (noting that a violation of the Texas constitution is also determined by a reasonableness standard under the circumstances).

occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Because it is undisputed that Officer Nance searched Warren's vehicle and seized the evidence without a warrant, Warren satisfied his burden of rebutting the presumption of proper police conduct, and we turn to whether the State has shown that the search and seizure was reasonable. *See Amador*, 221 S.W.3d at 672–73.

Whether a search and seizure is reasonable is a question of law that we review de novo by examining the totality of the circumstances. *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003).

One such exception is that a police officer may lawfully search an automobile if he has probable cause to believe that the vehicle contains evidence of a crime. *Neal*, 256 S.W.3d at 282. Probable cause to search "exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."

6

*Wiede*, 214 S.W.3d at 24. If the automobile exception applies, then the officer may search "every part of the vehicle and its contents that may conceal the object of the search." *Neal*, 256 S.W.3d at 282.

## C. Analysis

Citing *Arizona v. Gant*, Warren argues that the search was unreasonable because there was no concern that Warren would destroy or lose evidence of the crime for which he was detained because he was detained for displaying expired license plates and was already in police custody. *See* 556 U.S. 332, 343, 129 S. Ct. 1710, 1719 (2009). However, *Gant* was decided solely on the basis of a search incident to an arrest and did not alter the automobile exception to the warrant requirement. *See id.* at 350–51, 129 S. Ct. at 1723–24. The Court held that, absent certain justifications, a search of an arrestee's vehicle is unreasonable "unless police . . . show that another exception to the warrant requirement applies." *See id.* at 351, 129 S. Ct. at 1723–24. The automobile exception did not apply in *Gant*, but it applies in this case. *See id.* at 341, 129 S. Ct. at 1718. Therefore, we turn to whether Officer Nance had probable cause to search Warren's truck pursuant to the automobile exception. *See Neal*, 256 S.W.3d at 282.

While the record is silent on the reasons for the trial court's ruling, the record supports the trial court's implied factual finding that Officer Nance observed in Warren's possession two small plastic baggies, which Officer Nance concluded, based on his experience and training, were narcotics packaging. *See*

7

*Garcia-Cantu*, 253 S.W.3d at 241. Warren asserts that Officer Nance did not know what was in the baggies and that possession of the baggies themselves was not illegal. However, Officer Nance did not need to know that the baggies contained an illegal substance; instead, he needed knowledge of certain facts that would warrant a reasonable person in the belief that they contained an illegal substance. *See Wiede*, 214 S.W.3d at 24, 26–28 (noting that probable cause requires an evaluation of probabilities and determining that the defendant's possession of a clear plastic bag and the police officer's knowledge that drugs were commonly packaged in plastic bags contributed to probable cause).

The record also supports the trial court's implied finding that Warren abruptly removed the tin can from his lap when he saw Officer Nance at the window. *See Garcia-Cantu*, 253 S.W.3d at 241. While Warren told Officer Nance that the tin can's contents were to treat a back injury, a reasonably prudent police officer would be warranted in his belief that Warren's furtive gestures suggested that he possessed evidence of a crime. *See Wiede*, 214 S.W.3d at 24, 26–28 (considering, in its probable cause analysis, the defendant's suspicious act of removing the plastic bag and placing it between his seat and the console). In addition, the record supports the trial court's implied finding that Warren initially refused to exit the truck and concealed his right hand by his side between the seats. *See Garcia-Cantu*, 253 S.W.3d at 241. Such suspicious behavior would have warranted a reasonably prudent officer in believing that a controlled substance would be found in the truck, especially because the record

8

reflects that Officer Nance could not locate the baggies on Warren's person and that Warren denied knowing what plastic baggies Officer Nance was asking him about. *See Wiede*, 214 S.W.3d at 24, 26–28.

Therefore, reviewing de novo the application of the law to the trial court's implied findings—that Officer Nance observed plastic baggies in Warren's possession, that Officer Nance knew the significance of the baggies, and that Warren behaved suspiciously when Officer Nance confronted him—the totality of these circumstances gave Officer Nance probable cause to search Warren's truck for evidence of a controlled substance. *See id.* (holding that the officer had probable cause to search the car when the defendant had a clear plastic bag in his possession, the officer knew that drugs were commonly packaged in plastic bags, and the defendant hid the plastic bag between the driver's seat and the console); *Kelly*, 204 S.W.3d at 818–19.

As such, Officer Nance was permitted to search "every part of the vehicle and its contents that may [have] conceal[ed] the object of the search," even though, as Warren asserts, Officer Nance did not see Warren place anything in the bed of the truck. *See Neal*, 256 S.W.3d at 282. This searchable area encompassed both the bed of the truck, which is where Officer Nance testified that he had found the two original baggies, as well as the black plastic box, which Officer Nance testified had concealed the two additional baggies.[7] *See id.*;

---

[7]Warren asserts that the plain view doctrine did not justify the search of the black plastic box because its illegal character was not immediately apparent.

*Cummings v. State*, 727 S.W.2d 348, 351 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (holding that under the automobile exception, probable cause to search the truck extended to the bed of the truck). Because the record, when viewed in the proper light and with the appropriate deference to the trial court's ruling, supports a finding that Officer Nance found the two original baggies— State's exhibit 2A—loose in the bed of the truck and found the two additional baggies—State's exhibit five—in the black plastic box on the back floorboard, we infer that the trial court made these findings. *See Garcia-Cantu*, 253 S.W.3d at 241. Reviewing de novo the application of the law to the trial court's implied factual findings regarding the location of State's exhibits 2A and five, Officer Nance properly searched for and seized this evidence under the automobile exception to the warrant requirement.[8] *See Neal*, 256 S.W.3d at 282; *Kelly*, 204

---

However, the plain view doctrine is not applicable here because the automobile exception alone gave Officer Nance authority to search every part of the vehicle and its contents that might have concealed the object for which he had probable cause to search. *See Horton v. California*, 496 U.S. 128, 135–36, 110 S. Ct. 2301, 2307 (1990) (recognizing that the plain view doctrine serves to supplement a prior justification); *Neal*, 256 S.W.3d at 282.

[8]Warren does not directly challenge the trial court's admission of State's exhibits three, four, six, and seven into evidence. However, to the extent that he raises these issues by generally claiming that the trial court erroneously admitted evidence at trial, we overrule these issues. Indeed, State's exhibit seven—the tin can—could have concealed, and at one point did conceal, the object of Officer Nance's search. *See Neal*, 256 S.W.3d at 282. Therefore, Officer Nance's search of the tin can was permissible. *See id.* Also, State's exhibits three, four, and six were obtained during an inventory search, which Warren does not address. *See* Tex. R. App. P. 38.1(i); *South Dakota v. Opperman*, 428 U.S. 364, 369–72, 96 S. Ct. 3092, 3097–99 (1976) (discussing the reasonableness of inventory searches).

S.W.3d at 818–19.  Therefore, the search and seizure was reasonable under the Fourth Amendment, and the trial court did not err by admitting this evidence. U.S. Const. amend. IV; *Amador*, 221 S.W.3d at 672–73; *Wiede*, 214 S.W.3d at 24.  Accordingly, we overrule Warren's sole issue.

## IV.  Conclusion

Having overruled Warren's sole issue, we affirm the trial court's judgment.


PER CURIAM

PANEL:  MCCOY, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 15, 2012