**Affirmed and Memorandum Opinion filed June 14, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00484-CR

**KENNETH BROUSSARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 61,951**

## M E M O R A N D U M   O P I N I O N

Kenneth Broussard appeals his conviction for sexual assault on the grounds that the trial court erred in denying (a) his motion to suppress evidence and (b) his motion for a mistrial based on prosecutorial misconduct. We affirm.

### BACKGROUND

Appellant was indicted in April 2010 for the sexual assault of his seventeen-year-old stepdaughter. Because he has not challenged the sufficiency of the evidence to support his conviction, we limit our discussion of the facts here and throughout the opinion to those necessary to dispose of his issues.

Appellant filed a motion to suppress, among other things, a buccal swab sample taken from him. The trial court heard the motion to suppress on May 2, 2011. At the hearing, the officers present when the sample was taken testified that appellant had been provided his *Miranda* warnings prior to the sample being taken. They further testified that when they asked appellant to provide the buccal swab sample, he orally consented. Both officers stated that appellant voluntarily provided the sample, and they did not threaten or coerce him into providing it. The interview was videotaped.[1] The trial court denied the motion to suppress.

As is relevant to this appeal, the trial court made the following findings:

8. During the interview, the defendant gave the detectives a written statement.

9. The face of the written statement (titled Voluntary Statement) contained the following *Miranda* rights: (a) I have the right to remain silent and not make any statement at all and that any statement I make may be used against me at my trial; (b) any statement I make may be used as evidence against me in court; (c) I have the right to have a lawyer present to advise me prior to and during any questioning; (d) if I am unable to employ a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning; and (e) I have the right to terminate the interview at any time.

10. The defendant placed his initials next to each *Miranda* warning indicating that he knowingly, intelligently, and voluntarily waived the rights set out in the warnings.

11. The defendant wrote his statement and signed his name.

12. The defendant was not coerced, deceived, or promised anything in exchange for a written statement.

13. The defendant during the oral interview was asked to provide a buccal swab sample.

14. The defendant orally consented to giving the buccal swab sample.

15. The defendant voluntarily gave the buccal swab sample.

---

[1] The videotaped interview was not admitted at appellant's trial because it did not reflect that the officers provided appellant his *Miranda* warnings at the start of it. However, both officers testified that these warnings had been provided to appellant prior to the beginning of the recording, although there was some confusion as to which officer had actually read the warnings to him.

16. The defendant did not resist giving the buccal swab sample.

17. The defendant was not coerced, deceived, or promised anything in exchange for giving the buccal swab sample.

18. The defendant voluntarily signed his name and provided his thumbprint to the buccal swab submission paperwork.

The trial court made the following legal conclusion regarding the buccal swab sample:

> Based on the testimony of the witness[es] and the videotape, the court concludes that the defendant prior to giving a buccal swab sample was given his *Miranda* warnings, the defendant freely and voluntarily gave a buccal swab sample and that the defendant was not coerced or threatened to give the buccal swab sample.

Appellant pleaded not guilty to the charged offense. The jury found him guilty.

During the punishment phase of appellant's trial, out of the presence of the jury, appellant's counsel objected to a copy of an out-of-state judgment the State intended to offer because it allegedly was not properly authenticated. After the State argued that the judgment was admissible, the trial court stated, "I'm just telling you if there's an objection, I'll sustain it. You can offer it if you'd like to." In front of the jury, the following colloquy subsequently occurred:

> [The State]: And at [t]his time we would like to tender and offer this certified judgment from Calcasieu Parish in Louisiana showing a conviction for —
>
> [Appellant]: Your Honor —
>
> [The State]: — Kenneth Broussard —
>
> [Appellant] Your Honor, I'm going to object —
>
> [The State]: — for delivery of a controlled substance.
>
> [The Court]: Sustained.

Appellant's trial counsel approached the bench and stated that he was going to ask for a mistrial because the State "just told them [the jury] what we're trying to keep out." Appellant's counsel then stated that his objection was that the judgment was not properly authenticated. The trial court, before the jury, again sustained appellant's objection.

3

Appellant's counsel then asked the trial court to excuse the jury so that he could move for a mistrial. Appellant's counsel then moved for a mistrial as follows:

> [N]ow comes the defendant, Kenneth Ray Broussard . . . and requests a mistrial in that the State just offered into evidence what I think is State's Exhibit No. 34 . . . which was a judgment. This Court sustained the objection. However, the State told the contents of the — of the judgment orally.. So the jury heard what was said. So, it — it makes my motion almost moot. Although the Judge sustained the objection, the jury is not going to forget that he said that the defendant was convicted in Louisiana. So, I believe that my client has been unduly prejudiced by the State's oral declaration.

The trial court denied appellant's motion for a mistrial and sua sponte instructed the jury to disregard as follows:

> First of all, the objection made . . . regarding State's Exhibit 34 . . . has been sustained. So State's Exhibit 34 is not admitted into evidence. . . .
>
> And the statements made by the State, I'm going to instruct you to disregard those statements. In that instruction to disregard, you cannot consider that for any purpose. Okay?
>
> All right. Everybody understand the instruction to disregard?
>
> Okay. Very good.

After both sides rested and closed, the jury was charged. The jury sentenced appellant to fifteen years' confinement. This appeal timely followed.

## ANALYSIS

### A.     Motion to Suppress

In his first issue, appellant asserts that the trial court erred in denying his motion to suppress the buccal swab sample obtained during his custodial interview. We review a trial court's suppression ruling under an abuse-of-discretion standard. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). At a suppression hearing, the trial judge is the sole fact-finder. *Arnold v. State,* 873 S.W.2d 27, 34 (Tex. Crim. App. 1993). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and

demeanor, but we review *de novo* application-of-law-to-fact questions that do not turn on credibility and demeanor. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment protects against unreasonable searches and seizures by government officials.[2] U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). Here, the parties agree that the search and seizure at issue occurred without a warrant. In such a situation, the burden of proof shifts to the State to establish that the search was reasonable. *See Amador v. State*, 221 S.W.3d 666, 672–73 (Tex. Crim. App. 2007). Whether a search and seizure is reasonable is a question of law that we review *de novo* by examining the totality of the circumstances. *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). Consent to search is a well-established exception to the Fourth Amendment requirement of a warrant and probable cause. *See id.*

Appellant asserts that his failure to complain or refuse to provide the buccal swab sample was simply a submission by appellant to the officer's show of authority. *See Florida v. Royer*, 460 U.S. 491, 497 (1983) ("Neither is it disputed that where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority."). But both officers present during appellant's interview testified that appellant was twice provided his *Miranda* warnings: once before the start of the recorded interview and once when he provided his written statement. Both officers likewise testified that appellant was asked to

---

[2] The search and seizure provisions of the Texas constitution warrant an analysis distinct from the federal constitutional analysis. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991). However, because appellant makes no distinction between the constitutions with regard to this matter, and absent authority to the contrary, our discussion applies to both. *See Metoyer v. State*, 860 S.W.2d 673, 676 n. 4 (Tex. App.—Fort Worth 1993, pet. ref'd) (noting that a violation of the Texas constitution is also determined by a reasonableness standard under the circumstances).

give a buccal swab specimen, and he voluntarily complied. They stated that no force or threat was used to obtain the specimen, although one of the officers admitted he may have informed appellant that the buccal swab sample could provide evidence that he did not commit the offense. Finally, both officers acknowledged that appellant was not specifically informed he had a right to refuse to provide the buccal swab sample.

In determining whether consent was voluntary, we look to certain relevant factors, such as: the youth of the accused; the education of the accused; the intelligence of the accused; the constitutional advice given to the accused; the length of the detention; the repetitiveness of the questioning; and the use of physical punishment. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000); *State v. Hunter*, 102 S.W.3d 306, 311 (Tex. App.—Fort Worth 2003, no pet.). Additionally, testimony by law enforcement officers that no coercion was involved in obtaining the consent is evidence of the voluntary nature of the consent. *Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000); *Hunter*, 102 S.W.3d at 311. Consent is not rendered involuntary merely because the accused is under arrest. *Johnson*, 68 S.W.3d at 653. A police officer's failure to inform the accused that he may refuse consent is a factor to consider in determining the voluntariness of consent; however, the absence of such information does not automatically render the accused's consent involuntary. *Id.* at 653

Here, appellant did not testify; hence he did not produce any evidence to suggest that he did not consent to providing a DNA sample. *See State v. Kelly*, 204 S.W.3d 808, 819 n.22 (Tex. Crim. App. 2006) (noting that the appellant has the initial burden to produce evidence to support a finding that she did not consent to a blood draw). Testimony of the officers present during the interview, as well as the videotape of the interview, support the trial court's finding that appellant voluntarily consented to providing the buccal swab sample. Appellant leaned over and opened his mouth to submit to the officers' request for the buccal swab sample. Additionally, he orally consented to providing the sample, signed the form accompanying the sample, and voluntarily placed his thumbprint on the form. After reviewing the totality of the circumstances, we

6

conclude that appellant voluntarily consented to providing the buccal sample. *See Kothe*, 152 S.W.3d at 62–63. Accordingly, we overrule his first issue.

## B.    Motion for Mistrial

In his second issue, appellant complains that the trial court erred in denying his motion for mistrial "due to prosecutorial misconduct." The proper method of preserving error in cases of prosecutorial misconduct is to (1) object on specific grounds, (2) request an instruction that the jury disregard the comment, and (3) move for a mistrial. *Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995) (per curiam); *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993). However, as described above, appellant moved for a mistrial after the trial court sustained his objection that the exhibit was not properly authenticated. Appellant made no objection on the basis of prosecutorial misconduct in the trial court. By failing to object on this theory at trial, appellant has preserved nothing for our review. *Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Moreover, as mentioned above, the trial court stated that the State could offer the judgment at issue if it wanted, but that the court would sustain an objection if one were made. Further, the trial court, sua sponte, instructed the jury to disregard and even went so far as to ascertain whether the jury understood this instruction. Under these circumstances, appellant's second issue presents nothing for our review, and we overrule it.

## CONCLUSION

For the foregoing reasons, we have overruled appellant's appellate issues. Accordingly, we affirm the trial court's judgment.

/s/      Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).

7